VAN VECHTEN, executor, &c. *vs.* VAN VEGHTEN and others.

Where the testator, by his will, after providing for the payment of his debts, and making certain specific bequests, gave the residue of his real and personal estate to his executors in trust to lease his house and lot on *Market-street*, and to lease and sell and convey the rest of his property, and apply the proceeds and income thereof as follows : one-fifth to his son in fee; three-fifths to the support of his daughters, E., G., and H., respectively ; and one-fifth to the support of his daughter A., free from the control or debts of her husband ; and should any of his daughters die leaving issue, the share given for her support to be applied to the support and education of such issue ; but in case either of his said daughters should die without leaving issue, the use and income of her share which should then remain, to be divided among his surviving children or their heirs, except the share thereof to which his daughter A. would be entitled, which was to be vested in his executors, subject to the trust relative to her fifth of the estate : *Held*, that under the provisions of the revised statutes, the devise of the testator's house and lot upon Market-street was inoperative and void ; as the trust to receive the rents and profits during the lives of his four daughters would suspend the power of alienation for more than two lives.

*Held also,* that the devise of the residue of the real estate was valid as a power in trust to the executors to sell such estate for the benefit of legatees, and convert the same into personalty for all the legal purposes of the will; and to invest the share of each daughter as personal estate, and to receive the interest or income thereof for her use. But as the power to lease such real estate and receive the rents during the lives of the four daughters might suspend the alienation beyond the limits allowed by law, the trust to lease the same and receive the rents thereof as real estate was therefore void; and that the land descended to the heirs at law of the testator, subject to the right of the legatees to have the same immediately converted into personal estate by the execution of the power in trust to sell.

*Held further,* that each of the daughters of the testator was entitled to the whole income of her fifth of the estate for her support during life, and to so much of the principal of the fund, in addition thereto, as might be necessary for that purpose from time to time; and that the residue of the principal of the share of each daughter who should leave issue at the time of her death, would belong absolutely to such issue, under the provisions of the will.

Where the testator directed in his will that his son should be discharged from all notes which he held against him, and from all charges made against him by the testator for loans or advances, and all claims against him for the occupation or rents of certain premises specified: *Held,* that the son was entitled to a dicharge from all such claims against him which existed at the death of the testator, and not merely those which were in existence at the date of the will.

To take the case of a specific legacy out of the general rule, that in a will of personal estate the testator is presumed to speak with reference to the time of his death, there must be something in the nature of the property or thing bequeathed, or in the language used by the testator in making the bequest thereof, to show that he intended to confine his gift to the property or subject of the bequest as it existed at the time of the making of the will.

In trusts of personal property, or of money, a suspension of the absolute ownership of a part of the property or fund, beyond the time allowed by law, will not render the suit void as to another part of the property or fund which can be separated therefrom.

Every limitation of a future interest, or use, in any particular portion of a personal fund, which would have the effect of suspending the absolute ownership of that part of the fund for a longer period than is allowed by law is absolutely void. But the limitation of other interests in that part of the fund may still be valid, if they are in the nature of different and distinct estates therein.

If personal estate is vested in trustees upon various trusts, some of which trusts are valid and the others void, the court will sustain such as are legal and valid, if they can be separated from those which are illegal and void.

Where it is necessary to carry into effect the intention of the testator, under a power in trust to convert real estate into personalty or personal estate into realty, so as to produce no injustice between the different objects of his bounty, equity considers the conversion as having been made at the death of the testator or at least within one year thereafter

A testator having by his will bequeathed to each of his three daughters who should marry an outfit, of a specified value, two of the daughters subsequently married during the life of their father; who died a short time thereafter, without having given to either of them any marriage portion; *Held*, that each was entitled to her outfit, under the will, in the same manner as she would have been if she had married after the testator's death.

January 21.      THE object of this suit was to obtain a judicial construction of the will of Abraham Van Vechten, deceased ; several questions having arisen between the executors and some of the devisees and legatees, as to the meaning of many of the provisions of the will, as well as to the validity of most if not all of the trusts contained therein. At the time of the making of the will, in March, 1833, and at his death in January, 1837, the testator had five children who were his only heirs at law ; to wit : Jacob T. B. Van Vechten the complainant, Anne the wife of Walter Van Veghten, Eliza, Gertrude, and Harriet Maria. After the making of the will and before the death of the testator, Gertrude married A. S. Van Vechten, one of the executors and trustees named in the will, and Harriet Maria married W. Lehmann. By his will, the testator, in the first place, directed his debts and funeral expenses to be paid out of his estate ; for the purpose of paying which debts, &c. he authorized his executors to sell the whole of his real and personal estate, or so much thereof as a majority of the executors, who should assume the execution of the will, might deem proper ; except his dwelling-house and lot, and the house and lot occupied by his son. He then devised to his son, in fee, the house and lot wherein the latter resided ; but directed that the son should be charged therefor, in the settlement and division of the residue of the estate, as thereafter directed, the sum of $6000. He also directed that his son should be discharged from all notes which he held against him, and from all charges made against him on book or otherwise, for loans or advances by the testator to or for him, and all claims against him for the occupation of, or rents by him received for, the two houses and lots in that clause of the will mentioned. And he likewise released

to his son-in-law, Walter Van Veghten, all the moneys
which the latter owed for moneys advanced to or for him,
by the testator. He also bequeathed to his son the use of
his gold watch, for life, with remainder to his grandson;
and he likewise authorized his son to take the whole or any
part of his law library, at an appraised value. The fifth
and sixth clauses of the will were as follows:

" *Fifth*—The residue of my real and personal estate I
give, devise, and bequeath to my executors or the survivor
of them, and their assigns, *in trust*, to lease my aforesaid
dwelling house and lot fronting on Market-street, and to
lease and sell and convey the residue of my real estate, and
invest the same as they shall deem most beneficial, and ap-
ply the proceeds and income thereof, including the sum
charged against my son for his house and lot devised to
him, and deducting $1200 from the share given in trust for
the support of my daughter Ann, as follows, to wit : The
equal fifth part thereof, including the $1200 to be deducted
as above from Ann's share, and the $6000 charged against
my son Jacob T. B. Van Vechten, to my said son, his heirs
and assigns; three-fifth parts to be applied towards the
support of my daughters Eliza, Gertrude, and Harriet Ma-
ria respectively; and the remaining fifth, excluding the
aforesaid $1200, to be applied towards the support of my
daughter Ann, in such a manner as my executors or a ma-
jority of them, or survivors of them, shall deem most proper
and expedient, free from the contracts or debts of her
husband.

" *Sixth*—Should any of my said daughters die, leaving
issue living, the share of my estate devised and bequeathed
for her or their support, to be applied towards the support
and education of such issue; and should either of my
daughters, Eliza, Gertrude, or Harriet, marry, I will that
each receive an outset of the same value as my daughter
Gertrude has had, in addition to the above share of my
estate devised and bequeathed to and for their use. But
in case any of my said daughters die without leaving issue
living, the use and income of my estate so as above devised

and bequeathed to her or them, which may remain, shall be divided among my surviving children or their heirs; except the share thereof to which my daughter Ann would be entitled, which I will and direct shall be vested in my aforesaid trustees, subject to the aforesaid trust relative to her share of my estate."

The testator appointed the complainant his son, and his nephews A. S. Van Vechten and T. Van Vechten, together with J. Winne, executors of his will; the two last of whom renounced the trust; but the other two proved the will and took out letters testamentary thereon. The testator at the time of his death, was seized of considerable real estate, besides his dwelling house and lot on Market-street, and the house and lot devised to his son; as well as of some personal estate. His daughter, Mrs. Lehmann, had one child born in the lifetime of her father, and another subsequent to his death; both of whom were made defendants in this suit, together with the daughters of the testator, and the husbands of such of them as were married. The complainants stated that doubts had arisen as to the true construction of the will in several important parts thereof; as to which parts counsel who had been consulted by him differed in opinion; and as the individual interests of the co-executor and his wife were involved in such construction, he declined being a co-complainant, and was therefore made a defendant in the suit. The particulars in which a judicial construction of the will was asked by the complainant in his bill, were,

*First.* Whether by the second clause of the will, the complainant was discharged from all notes and charges for loans, advances, rents, &c. due at the time of the testator's death, or only such as were due at the time of the execution of the will?

*Second.* Whether the devise of the testator's dwelling-house and lot on Market-street, in trust to lease the same and apply the income thereof in the manner and for the period in the will limited, created a valid trust; and if not, whether such house and lot were legally devised so as

to give the executors any power to lease or otherwise dispose of the same ?

*Third.* Whether the power to lease, sell and convey the residue of the testator's real estate, except the house and lot devised to his son, was a legal and valid power, which might be exercised by the executors at any time during the continuance of their trust, in their discretion ?

*Fourth.* Whether under the fifth clause of the will, the executors were authorized to apply any part of the principal of the shares of the testator's daughters, respectively, for their support, if the income thereof was not sufficient for that purpose ?

*Fifth.* Whether any part of the income of either of the three fifths of the estate directed to be applied to the support of the testator's daughters Eliza, Gertrude, and Harriet Maria, respectively, if the whole of the income of the one-fifth should not be wanted for the support of one of such daughters, could be taken and applied, if necessary, to the support of either of the others of the said three daughters ?

*Sixth.* Whether the executors were themselves bound strictly to attend to the application of the income of the estate to the support of the respective daughters of the testator ; or whether the payment to the daughters severally, of such portions of the proceeds and income of the estate as they were required to apply for their support, would be a compliance with the requisitions of the will, and their receipts sufficient vouchers for the executors in passing their accounts ?

*Seventh.* Whether under the will, and particularly under that part thereof which directs that in case of the death of any of the testator's daughters, leaving issue living, the share of such daughter should be applied to the support and education of such issue, the issue would be entitled at any time to the whole of that share which was not required for such support and education ; or if not, what disposition was to be made of the residue of such share ?

*Eighth.* Whether the two daughters of the testator, who married after the making of the will and before the death

of the testator, were entitled to the outfits, mentioned in the sixth clause of the will ; and whether, in the event of a future marriage of either of the testator's daughters, Eliza, Gertrude, or Harriet Maria, the trust as to her share of the estate will be terminated, so that she will be entitled to receive not only such outset but also the one-fifth of the estate devised and bequeathed for her use ?

*Ninth.* Whether in the event of any of the daughters dying without leaving issue, the trust as to that share of the estate, except so much thereof as in that event is limited over to the executors for the separate use of Ann, ceases ; so that the devisees in remainder will be entitled to receive their distributive shares thereof immediately and absolutely ?

*Tenth.* Whether the trust created by the fifth and sixth clauses of the will, is a single trust, to continue until all the daughters of the testator therein named are dead ; or four separate and independent trusts, each of which will terminate at the death of the cestui que trust ?

The adult defendants put in a joint answer, admitting the facts stated in the bill ; but insisting they were advised by counsel that several of the provisions of the will of the testator were not in conformity with the provisions of the revised statutes, and were therefore inoperative and void ; and particularly, that several of the trusts created by the will were not such trusts as were authorized by the revised statutes ; and also that the limitations of the estates in trust, created in and by the fifth and sixth clauses of the will, or some of them, exceeded the period allowed by law for the suspension of the absolute power of alienation, and such estates were therefore absolutely void in their creation. And those defendants concurred with the complainant in asking for a judicial construction of the will in the several particulars mentioned in his bill, and as to all other questions arising under the will. The infant defendants put in a general answer by their guardian ad litem, submitting their rights to the decision of the court. The cause was heard upon the bill and answers, and upon a

master's report as to the truth of the matters stated in the bill.

*S. Stevens & D. Buel, jun.* for the complainant. The fifth clause of the will manifestly creates a trust estate in the executors as to the house and lot on North Market-street during the lifetime of the testator's four daughters at least. During this period the executors have no right to alien the property, because it would be a violation of their duty. The effect of this devise would be different had the executors power to sell this house and lot as they have the residue of the real estate. 1 *R. S.* 730, § 65. The cestui que trusts cannot sell, assign or in any manner dispose of their interests therein. (*Ibid.*) It cannot be known in whom the reversion in fee will vest until after the death of all the daughters. There are, therefore, no persons in being by whom an absolute fee in possession can be conveyed. By the provisions of this devise, therefore, the absolute power of alienation of this house and lot is suspended for a longer period than during the continuance of two lives in being at the creation of the estate. The devise of this property is therefore void, and it descends to the heirs at law of the testator. (1 *R. S.* 723, § 14, 15.) The disposition of the residue of the testator's real and personal estate which is made by the fifth and sixth clauses of the will, is valid. The fifth clause authorizes and directs the executors to lease and sell and convey the residue of the real estate, &c. This is an authority to the executors to do both or either ; they may sell the whole or lease the whole, or lease part and sell part, in their discretion. That part of the trust which authorizes the trustees to lease any portion of the residue of the estate thus devised to them in trust is void, for the reasons above stated as to the house and lot on Market-street ; but this does not necessarily render void the trust to sell, and as they are authorized to sell, the trust may be executed in that manner, and will be valid for that purpose, if there is no other legal objection to it. When the execu-

1840.

Van Vechten
v.
Van Veghten.

tors by sale have converted the whole of the residue of the real estate into money, they are required to invest the same as they shall deem most beneficial, and apply the proceeds and income thereof. The estate, after being converted into money, is to be divided into five equal parts. There is in reality no trust as it respects the share of Jacob T. B. Van Vechten ; or at most, no further than may be necessary to authorize the executors to reduce the estate to cash for the purpose of a division, which may rather be termed a power than a trust ; or if it should be deemed a trust, the purpose for which it was created, as to the son's one-fifth ceases when the estate is reduced to money and divided, and of course the estate of the trustees in that share also ceases at that time.

There is a trust, however, so far as regards the shares of the testator's four daughters. The executors are to apply their shares towards their support and maintenance. This necessarily implies that the executors are to use a discretion in the amount to be applied from time to time for their support. They are to invest their shares and apply the income and so much of the principal as may be necessary for their support. The trustees are not barely to receive the rents and profits and pay over, but are themselves to apply the income, and the principal if necessary, of the share of the daughters to their support during their lives respectively ; this is therefore an active trust, and one authorized by the statutes. (*See* 14 *Wendell's Rep.* 322.) This trust is not void, as suspending the power of alienation of the trust estate for a longer time than the duration of two lives in being at the death of the testator. It is a trust of one-fifth of the testator's estate, for the maintenance of each of the daughters separately or individually, and terminating as to each one-fifth upon the death of each of the daughters. If one of the daughters should die leaving issue, the trust as to her fifth would continue only during the life of such daughter, and until the issue left by her should arrive at the age of twenty-one years. If any of the daughters should die without issue living,

the will directs the use and income of the share of the estate devised and bequeathed to her, which may remain, to be divided among the testator's surviving children ; that is, the share or portion of the testator's estate devised and bequeathed to the daughter so dying, and which may remain undisposed of at her death, is to be so divided. The estate of the trustees in the share of the daughter who shall die without leaving issue living, ceases then on the death of such daughter. A court of equity will so construe the will as to give effect to the intention of the testator, where it can be done without a manifest violation of the meaning of the terms and language made use of in the will. The general intent of the testator is manifest, to create a trust for the maintenance and support of his daughters during their lives. The trust during the lives of the daughters, considering it a separate trust for each, may be declared valid ; although the trust in favor of the issue of such daughters may be deemed void. This would be carrying the intent of the testator into effect so far as is consistent with the rule of law ; which the court is authorized to do. (1 *R. S.* 748, § 2. 14 *Wend.* 308.) The provision made in the sixth clause of the will for the outset of the testator's daughters Eliza, Gertrude and Harriet Maria, in case they or either of them should marry, can only apply to such of those daughters as should marry after the decease of the testator. The outset mentioned in the will cannot be given by the executors to either of the daughters who were married subsequent to the date of the will, and prior to the death of the testator. The decision of the chancellor upon a similar provision in the will of Mr. James, is conclusive upon this question. (5 *Paige's Rep.* 322, 477.) This part of the chancellor's decision in that case was afterwards affirmed in the court for the correction of errors.

*J. Rhoades,* for the infant defendants, concurred in these views of the questions arising on the will.

*John Davis,* for the adult defendants. The devise in trust of the house and lot in North Market-street, contain-

1840.

Van Vechten
v.
Van Veghten.

ed in the fifth clause of the will, is void, and the property descends to the heirs at law of the testator. If valid, it would create a trust estate in the executors at least during the lives of the testator's *four* daughters. And it might continue for at least such longer period as should be necessary for the support and education of the issue of either of them who should die leaving such issue living. The executors have no power to *sell* this house and lot. And the *cestuis que trust* cannot assign their interest therein. Consequently, the devise suspends the absolute power of alienation for a longer period *than during the continuance of two lives in being at the creation of the estate,* and is, therefore void. (1 *R. S.* 730, § 63. *Id.* 723, § 14, 15. *Wood* v. *Wood,* 5 *Paige,* 596. *Hawley* v. *James, id.* 318 *to* 320. *Coster* v. *Lorillard,* 14 *Wendell,* 265. *Hawley* v. *James,* 16 *id.* 61.)

The authority contained in the fifth clause of the will, given to the executors to *lease, and sell and convey,* the residue of the real estate of the testator, so far as their right *to lease* the same is concerned, is also void. The trust contained in the fifth clause of the will, for the benefit of the complainant, J. T. B. Van Vechten, is also void. The manifest intention of the testator in this clause was, not to devise or bequeath to him any estate or property absolutely, but to devise the whole of the residue of the estate to the executors, *in trust,* to lease the same and pay *one-fifth* of the rents, or to sell the same, invest the proceeds, and pay one-fifth of the *income* of the proceeds, or in part both, at the discretion of the trustees. In one or both these ways a common fund was to be created in the hands of the trustees, by whom the proceeds or income of this fund was to be disposed of as directed by the fifth and sixth clauses of the will. Now the complainant, *J. T. B. Van Vechten, is one of the trustees, and may become, by survivorship, the sole trustee,* and cannot legally be trustee for himself as *cestui que trust.* Besides, this part of the trust is inseparably blended in its execution with the provisions mentioned in the next point. (5 *Paige,* 320.)

The trust contained in the fifth and sixth clauses of the
will for the benefit of the testator's *four* daughters, espe-
cially that relating to *Eliza, Gertrude and Harriet Maria,*
*is void, as suspending the power of alienation of the trust*
*estate, for a longer period than two lives in being at the*
*death of the testator.* The testator intended to create a
trust of the whole four-fifths of the residue of his estate for
the *joint* benefit of his *four* daughters ; and in case of the
death of either, substituting her issue in her place. And
he intended to leave their interest in the *use and income*
of this fund, joint, to provide for the case of unequal wants
through sickness or misfortune. If this be so—if this in-
vestment is to continue during *the lives of the four daugh-*
*ters,* and as a fund for the support and education of the is-
sue of such as shall die leaving issue, the trust is void.
There is no *express provision* for the vesting of the real
estate in the children of the testator, if it should be leased
by the trustees, nor of the fund if it should be sold and the
proceeds invested. They are to have *the proceeds and*
*income thereof.* These clauses of the will, afford no
reasonable or just implication, that the testator, when they
were drawn, had at all in his mind the idea of a division of
the principal fund during the lifetime of any of his children.
The direction in the will as to the outfits of Eliza, Ger-
trude and Harriet Maria, are irreconcileable with the idea
of a division of the principal fund.

It may, perhaps, be safely affirmed that no part of the
testator's estate, except that directed to be applied to the
payment of debts, and existing in debts released, and given
in specific legacies and devises and outfits, *is, in any man-*
*ner, finally disposed of.* At least the trust, as to the three-
fifths the income of which, is given to Eliza, Gertrude and
Harriet Maria, is void. The terms in which their interest
is given, are as follows : *three-fifth parts to be applied*
*towards the support of my three daughters respectively.*
The word *respectively, qualifies the persons* and not the
parts of the fund given. The whole of these three-fifths
is a joint fund, and must continue during the lives of the

three daughters, as there is no provision that one-third of the three-fifths shall be applied to the support of each, but the *whole income* was intended to be applied to all, as their wants might require. Three persons must die before the trust fund can be absolutely disposed of, and consequently, the absolute power of alienation is suspended for a longer period than the statute justifies.

THE CHANCELLOR. The first question, as to which the parties in this case ask for a judicial construction of the testator's will, arises upon the provisions contained in the second clause thereof, discharging the complainant from all notes which the testator holds against him, and from all charges on book, or otherwise, against him for loans or advances to or for him, and all claims for the use or rents of the two houses mentioned or referred to in that clause of the will. This provision, as well as the similar provision in the same clause, for the release of W. Van Veghten, the son-in-law, of what he owed on account of moneys advanced to or for him, by the testator, are in the nature of personal legacies of the several sums thus due from them respectively. And, in the absence of any thing from which it can be inferred that it was the intention of the testator to confine these testamentary bequests to what was due at the date of the will, the provision must be construed to include all sums thus due at the time of his death, and to exclude any thing which had been paid, or secured in a different manner, previous to that event. Although, as a general rule, it is well settled that a will of personal property relates to the time of the death of the testator, both as to the legatees and the subjects of the bequests mentioned in the will, yet, in the case of specific legacies, it is sometimes very difficult to ascertain whether he intended to confine the bequests to the subject matter thereof as it existed at the time of making the will, or as it might exist at the time when such will should take effect by his death. But to take the case out of the general rule, that in a will of personal estate, the testator is presumed to speak with

reference to the time of his death, there must be something in the nature of the property or thing bequeathed, or in the language used by the testator in making the bequest thereof, to show that he intended to confine his gift to the property, or subject of the bequest, as it existed at the time of the making of the will.

1840.

Van Vechten
v.
Van Veghten.

In the case of *Sayer* v. *Sayer*, (*Gilb. Eq. Rep.* 87,) where the testator bequeathed all his personal estate in Wanstead, to J. S., as a specific legacy, Lord Cowper decided, that the bequest related to the time of the death of the testator ; and therefore that the testator's coach and horses, which were at that place at the time of his death, and all the arrears of rent then due, issuing out of his lands there, belonged to the legatee. And this case appears to have been followed in most of the subsequent decisions, where the terms of the legacy were general, as in the case under consideration ; except in those cases in which ·the language of the will itself clearly indicated the intention of the testator to confine the bequest to the time of the execution of the will merely. (*See* 1 *Roper on Leg.* 188 ; *and* 2 *Will. on Executors*, 885.) The decision in *Sayer* v. *Sayer* was also in strict accordance with a previous decision of Sir Nathan Wright, made in the case of *Gayre* v. *Gayre & North*, (2 *Vern. Rep.* 538,) a few months before the great seal was delivered to Lord Cowper the first time, in 1705.

The case of *Smallman* v. *Goolden*, (1 *Cox's C. C.* 329,) is certainly an authority against the complainant on this question ; so far as a decision of the master of the rolls can be said to be an authority, when it conflicts with previous decisions of the holders of the great seal. In that case the bequest to the son was general, of all sums of money due to the testator on bond, or bonds, or any other security. And the son, at the date of the will, being indebted to the testator upon one bond only, and becoming indebted to him in another bond afterwards, Lord Kenyon held that the first bond only passed by the bequest, and that the subsequent bond debt was not included therein.

If there had been any thing in the language of the will, in that case, to confine the bequest to debts then existing—for instance, the words " now due," which were used by the testator, in the case of the *Attorney General* v. *Berry*, (1 *Eq. Cas. Abr.* 201)—I should have fully concurred in the conclusion at which the master of the rolls arrived.    But as the testator had used general words, which were broad enough to include the subsequent bond as well as the one then in existence, the words " all bonds," in the plural being used, when there was but one bond at the time of the making of the will, I think the decision in that case was in conflict with the whole current of authorities in reference to wills of personal estate.    All question on the subject is now put at rest, in England, by the 24th section of the recent statute of wills, (1 *Vict. ch.* 26 ;) which declares, in accordance with what Mr. Williams supposed to have been the true rule on the subject previous to that time, that a will, in reference to the estate comprised therein, shall be construed to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will.    And the same rule is now extended to wills of real estate ; which before that statute had reference to their dates only, and could not transfer the title to after acquired lands by any form of expression.

The supposition of Lord Kenyon, that the testator intended to measure his bounty according to the situation at the time of making his will, although he had used general terms which were broad enough to cover any bonds, or other securities, which he might have against his son at the time of his death, could with equal propriety be applied to a general bequest of all the testator's furniture, horses, or bank stocks ; as to which there is no doubt that a bequest in those general terms, without any words of restriction, would carry to the legatee all of that description of property which the testator had at the time of his death, although the whole, or a very considerable part thereof, was acquired after the making of the will.    In the case

under consideration, the language of the will is equally broad and comprehensive, to cover all notes which the testator held against his son, and all charges made against him on book or otherwise for loans or advances to or for him, and all claims against him for the use and occupation of, or the rents received by him, for either of the two houses and lots therein referred to. And there is nothing to indicate an intention on the part of the testator to confine this devise to the debt as it then existed, or to the rents or use of the houses up to the date of the will only. On the contrary, there is reason to suppose, from the will itself, independent of the general rule of law on the subject, that as to the use and occupation of the house and lot where the complainant then resided, the testator did in fact intend to bequeath the same to him; as it was the same house and lot which had been specifically devised to him in the previous part of the same clause in the will. When we take into consideration, in connection with this, the well known fact, that the testator was one of our ablest and most distinguished lawyers, and was therefore well acquainted with the general rule of law on this subject, I think there can be no doubt that this provision in his will must have reference to the state of the subject matter of the bequest as it existed at the time of his death. All debts, therefore, which were due from the complainant, or from Walter Van Veghten, the son-in-law, to the testator at the time of his death, and which answer the description contained in this clause of the will, are discharged; except as against creditors of the estate, who will have a right to resort to the same in case of a deficiency of other property to pay the debts.

The recent decision of the court for the correction of errors, in the case of *Darling and others* v. *Rogers and Sagory*, decided in December, 1839, in which it was settled that a conveyance in trust was valid, so as to vest the estate in the trustees pro tanto, if any of the trusts therein specified were authorized by the revised statutes, although the property was conveyed upon other express trusts which

were prohibited by law, has relieved me from much embarrassment in relation to some of the trusts in this will. Previous to that decision, I supposed that the 58th section of the article of the revised statutes relative to uses and trusts, (1 *R. S.* 729,) which declares that where an express trust shall be created for any purpose not specified in the statute, no estate whatever shall vest in the trustee, when taken in connection with the previous decisions of the same court in *Coster* v. *Lorillard* and in *Hawley* v. *James*, in which cases I had attempted to separate the legal from the illegal parts of the trusts, precluded the possibility of making such a separation, where an estate not divisible in its nature was attempted to be conveyed to the trustees. It being now settled that any legal trust is sufficient to sustain a conveyance, to the trustee, of an estate commensurate with such trust, without reference to the illegal trusts which the testator or grantor has attempted to create in the same estate, there will be no difficulty hereafter in vesting the legal title in the trustee for any purpose which is authorized by the revised statutes; without reference to the illegal trusts connected therewith. But as the court of dernier resort, in its recent decision, has not in terms overruled that part of its decision in the case of *Coster* v. *Lorillard*, in which it was held that a trust to receive the rents and profits of real estate and apply them to the use of more than two persons for life, with contingent cross remainders in the shares of each, was void as to the shares of each cestui que trust, even for his or her own life, it appears to be impossible in the present case to sustain the devise of the testator's dwelling-house and lot in Market-street. As to that house and lot, it was unquestionably the intention of the testator that it should remain in the hands of his executors, to lease the same and to receive the rents and profits thereof, so long as any of his daughters should live; as the share in the rents and profits of either of them who shall die without issue living at the time of her death, is given over, to or for the use of the survivors. And as my attempt to carry into effect the in-

tention of the testator as far as was practicable consistently with the rules of law, by considering the share of each cestui que trust as a tenant in common in the rents and profits of the real estate as a separate and independent trust, was disallowed by the court of dernier resort, in the case of *Lorillard's will*, I am admonished by that decision, that it would be improper for me to attempt to sustain the devise of the Market-street house and lot, even for the lives of the several cestuis que trust in their respective shares. I must therefore declare that the devise of that part of the testator's property is void and inoperative ; and that the executors, as such, have no estate or interest therein under the will, and have no right or authority to lease the same, or to receive the rents or profits thereof. That house and lot, upon the death of the testator, descended to his five children as tenants in common. And the rents and profits thereof, since that time, belong absolutely to them, or to the husbands of such of the daughters as were married, in equal shares ; and must be distributed accordingly.

I should have had the same difficulty in sustaining the devise of the residue of the testator's real estate, on the ground that the testator had authorized that to be leased for the same length of time if the trustees thought proper to do so instead of selling the same, had it not been for the decision of the court for the correction of errors in the case of *Darling and others* v. *Rogers & Sagory*, to which I have before alluded. But that case shows, that where property is conveyed in trust, with authority to the trustee either to sell or mortgage the same, in his discretion, and the power to mortgage is illegal and void, the trust is still good as to the power to sell. In other words, the power to mortgage being void, it is an absolute power to sell ; not depending upon the discretion of the trustee but upon the right of the cestui que trust to compel the execution of the power. Applying the principle of that decision to the present case, as the discretionary power to lease the premises and to receive the rents and profits for

a term which might by possibility continue for more than two lives is illegal and void, the devise in trust must be construed in the same manner as it would have been if the power to lease such real estate had been left out; and as though the only power in trust, in relation to the real estate, was a mere power to sell and convey the same and convert it into personal estate, for the benefit of the legatees; and to invest the proceeds of their respective shares thereof upon such of the trusts directed by the testator as were legal, if any of them were so. No other construction can be given to this part of the will consistently with the decision of the court of dernier resort in the last mentioned case. And such a construction does not appear to be in actual conflict with the decrees of that court in the cases of the Lorillard, James, and Hone. wills; except the decision relative to some of the annuities in the first case, and the declaring of the legacy to Anna McBride James void in the second case. But I admit this construction may be inconsistent with the opinions of some of the members of that court in all of those cases.

The power to lease the testator's real estate, and to receive the rents thereof for the use of his children during the lives of the four daughters being void, on the ground that such a trust would suspend the power of alienation beyond the limit allowed by law, the legal title was not vested in the executors by the will. But it descended to the heirs at law, under the provisions of the 56th section of the article of the revised statutes relative to uses and trusts, to which I have before referred; subject to the execution of the power in trust, to sell the same for the benefit of the legatees, and to invest their respective shares thereof as personal estate, for all the valid purposes of the will. (1 *R. S.* 729, § 36.) A difficulty would still exist, if the executors had an unlimited discretion to execute this power of sale at any time during the lives of the four daughters. Such a power would not indeed suspend the power of alienation; as the trustees might at any time convey an absolute estate in the premises, by the execution

of the power, without any violation of the trust. But as the personal estate of the testator may not be, and probably is not, sufficient to make up the shares of the daughters respectively, including the $1200 which is to be deducted from the share of Ann, to the $6000 which is to be deducted for the share of the son, it appears to be necessary, in order to carry into effect the intent of the testator and prevent injustice, not only that this power in trust to sell and convert the real estate for the purposes of the will should be sustained, but also that it should be sustained as an imperative power ; the execution of which may be enforced by a decree of this court, if the executors should neglect or refuse to execute the same. The devise to the complainant, of the house and lot on which he resided at the date of the will, was absolute and unconditional ; and vested in him an indefeasible estate of inheritance, in fee simple, at the death of the testator. No provision is made by the testator for giving to the other children an equivalent for the $6000 at which that house and lot is estimated by him, except by deducting the $6000 from his son's share of the residue of the estate, in the settlement and division thereof as personal estate which the testator has directed in his will. And if this power in trust fails, or is not executed until the complainant and his co-executor think proper to do so voluntarily, he may continue to receive one-fifth of all the rents and profits of the other real estate, without giving to his sisters any equivalent for the $6000 at which his house and lot is valued by the testator ; in case the personal estate is insufficient, or the division thereof as contemplated by the testator is found to be illegal and therefore impracticable.

I think however, if the power to sell the residue of the testator's real estate, except the house and lot on Market-street, can be sustained as a valid power in trust, the case will be relieved from the embarrassment of having an unequal distribution of the estate of the testator among his children, contrary to his evident intention. For by the 96th section of the article of the revised statutes relative to

powers, it is declared that every trust power, unless its execution is made expressly to depend upon the will of the grantee, is imperative ; and imposes a duty on such grantee, the performance of which may be compelled in equity, for the benefit of the parties interested. (1 *R. S.* 734.) And, in all such cases, this court requires the power in trust to be executed in such manner as to produce no injustice to any of the parties. The trustee of such a power, therefore, can never be permitted to execute it at such a time or in such a manner as to defeat the intention of the party creating the power. And where it is necessary to carry into effect the intention of the testator, under a power in trust to convert real estate into personalty or personal estate into realty, so as to produce no injustice as between the different objects of his bounty, this court considers the conversion as having been made at the death of the testator ; or at least, within one year thereafter. (*See Leigh & Dalz. Eq. Conv.* 48.)

Having arrived at the conclusion that the power in trust to convert the real estate into personalty, in this case, is such as not to produce any suspension of the power of alienation of such real estate, and that to carry into effect the intention of the testator the execution of the power may be enforced in equity in reference to the time of the death of the testator, when the absolute devise to his son took effect, it remains to consider whether any, and if any which of the purposes for which the conversion is directed were legal and valid. For if the whole of the trusts upon which the converted funds are directed to be invested are illegal, the power in trust to sell the real estate is void.

The general plan of the testator's will appears to be, to divide his personal estate, and the proceeds of his real estate which was to be converted into personalty, into five equal shares, for the benefit of his five children respectively ; the advance of $1200 which had been made to the husband of his daughter Ann being considered as a part of her share, and to be deducted therefrom, and the estimated value of the house and lot devised to the son being considered as a part of his

share. And though the language of the will is not per-
fectly clear, I think he intended to give to his son an abso-
lute estate or interest in fee in his share. It is given to
him and his heirs and assigns. But the interests of the
daughters, in their several shares of the personal estate and
of the converted fund, the testator evidently intended
should be interests of a different nature. Ann was then
married. And it is certain he meant to place her share en-
tirely beyond the reach of her husband and his creditors;
not only as to the original share, but also as to any accu-
mulations which it might receive by the death of either of
the other daughters without leaving issue. In this respect
only does it differ from the interests of the other three
daughters in their respective shares. He intended that his
daughter Ann should not only have the whole income of
her share, as her separate estate, but that the executors
should also, from time to time, apply so much of the prin-
cipal of her share as might be necessary, for her support,
if the income was not sufficient for that purpose; and that
the shares of the other three daughters, respectively, should
be applied for their support and maintenance in the same
manner. No provision is made for the disposal of any
surplus income of the shares of either of the daughters; as
the testator was unquestionably satisfied that if each re-
ceived such a support as he intended she should have out
of her share of the estate, she would not only require the
whole income but also a part of the capital to be appropri-
ated for that purpose. The income of one daughter's share
cannot therefore be applied to the support of another
daughter; neither can the executors retain or accumulate
any part of the income of the share of either, without her
consent. But they must apply, or pay over to her for her
support, the whole income if she thinks proper to claim it;
and so much of the principal as may be necessary, from
time to time, in addition to such income. In the case of
*Gott* v *Cook*, (7 *Paige's Rep.* 538,) the principles are sta-
ted upon which trustees are to act in the application of a
trust fund, or the income thereof, to the support of the

cestuis que trust. And these executors will be protected so long as they act in accordance with those principles; whether they apply the income, &c. of the fund themselves to the wants of the cestuis que trust, or place the same in their hands, from time to time, to be applied by the cestuis que trust for themselves. But as the principal of the fund which has not been expended from time to time is limited over to others, upon the deaths of the daughters respectively, the executors will not be justified in appropriating either the principal or the income in advance. The remainders in fee, in the shares of such of the daughters as shall leave issue living at the time of their respective deaths, are not in terms given to any one. But by necessary implication from the whole will, the children or issue of either of the daughters, who are living at her death, will be entitled to an absolute interest in so much of her share as is then unexpended; although no words importing an absolute interest in fee in the children or issue are used. (1 R. S. 748, tit. 5, § 1, 2.) The direction to the executors, to apply the same to the support and education of such issue, applies to the capital of the fund, and was undoubtedly intended to provide for the issue as minors; it is therefore not inconsistent with the idea that the testator intended to give such issue the absolute ownership of the fund.

Although the testator in his will is supposed to speak in reference to the time of his death, it does not necessarily follow that the outfits which the daughters who marry are to receive, as legacies in addition to their shares, apply only to marriages which should take place after the testator's death. It is not unreasonable to suppose he may have contemplated giving them these legacies after his death, as marriage portions, even if the marriages should take place in his lifetime; but payment of such marriage portions to the daughters in the lifetime of the testator, would have operated as an ademption of the legacies. In the case of Mrs. Barker's marriage portion, the legacy was not absolute; but a discretionary power was given to the trustees to give her a marriage portion if she married

during the continuance of the trust. She married, however, before the trust commenced, and when the discretionary power, which the testator had given to others in case she married after his death, could have been exercised by himself. And it was for these reasons that I thought her case was not provided for by the will. (*See* 5 *Paige's Rep.* 477.) In this case, I think the two daughters who married during the lifetime of the testator, are each entitled to an outfit of $700, with interest thereon from the end of one year after the death of the testator; at which time those legacies should have been paid. And to provide for the outfit of the remaining daughter, the sum of $700 must be invested until it is ascertained whether the contingency upon which that legacy is payable will ever happen; the income thereof in the mean time is to be divided into five equal shares, and to be distributed or applied by the executors in the same manner that the income of the residue of the shares of the five children is to be distributed or applied. This provision for the payment of a future and contingent legacy out of personal estate, or out of real estate which is directed to be converted into personalty for the purposes of the will, does not violate any provision of the revised statutes; as it cannot interfere with the absolute disposition of any other part of the fund. And the absolute ownership of this part of the fund can in no event be suspended for a longer period than two lives in being at the death of the testator, to wit, the life of the unmarried daughter, upon the contingency of whose future marriage her right to the legacy depends, and the lives of the other daughters respectively into whose shares portions of the $700 may go, if she dies unmarried.

The words "in addition to the above share," in the sixth clause of will, do not indicate an intention of the testator that the share is to be absolutely payable on the marriage of the daughters respectively; but were used by him to show that the marriage portion was to be in addition to the equal share of the estate, and was not to be carved out of that share exclusively. The executors are therefore

1840.

Van Vechten
v.
Van Veghten.

bound to retain the principal of the original share of each of the daughters, which is not wanted for her support from time to time, and to keep the same invested during her life. And upon the death of either of the daughters without leaving issue, what remains of her share is to be distributed equally between the surviving children of the testator, and the heirs—that is, the children or descendants of such of the testator's children as have died leaving issue ; except the share to which Ann may be entitled in the share of a deceased sister, which is to be held by the executors as trustees for her separate use, free from the control of her husband, during the continuance of her life. The income and so much of the principal as is necessary for that purpose must be applied for her support. And what remains thereof at her death, will belong to her absolutely ; and may be disposed of by her will as her separate estate. But what remains of her original share, if any thing, will then belong absolutely to her children or issue if she has any ; and if she has none, it will then belong to her surviving sisters and brother, and the children or issue of such of them as have died leaving issue, in fee.

In trusts of personal estate, or of money which is infinitely divisible in its nature, a suspension of the absolute ownership as to one part of the fund for a longer period than is allowed by law, will not make void the disposition which has been made of another part thereof. As the statutory rules as to limitations of future contingent interests in lands are applicable to similar interests in personal property, any limitation of a future interest or use in any particular portion of a personal fund, which would have the effect to suspend the absolute ownership of that part of the fund for a larger period than is allowed by law, would be absolutely void in its creation. But it does not follow from this, that every interest which has been created in that particular part of the fund is also void, if it is in the nature of a separate and distinct estate or interest therein. And as the revised statutes have not prohibited express trusts of personal property for any purposes which are le-

gal, it follows of course, that where personal estate is vested in trustees upon various trusts, some of which are valid and others void, the courts must sustain those which are legal and valid if they can be separated from those which are illegal and void.

In the present case, no material change in the disposition which the testator intended to make of his property will be produced by separating the unauthorized trusts relative to the house and lot in Market-street, and the power to lease his other real property, from the trust to convert such other real property into personalty and to invest the same with the other personal estate, upon the other valid trusts specified in the will.

As the equitable conversion of the real estate into personalty has reference to the death of the testator, if the rents and profits previous to the actual conversion are distributed equally among the five children, the three daughters must be allowed the interest on $6000 of their shares from the same time, as an equivalent for the value of the house and lot devised to the son ; and Ann must be allowed interest on same sum, less the $1200 specified in the will. As between Ann and her husband, the rents of her share of the real estate, except those of the house and lot in Market-street, will belong to her, from the death of the testator, as a part of her separate estate, according to the intention of the testator as stated in his will.

A decree must therefore be entered, declaring the construction of the will accordingly ; and directing the executor to sell the real estate, except the Market-street house and lot and the house and lot devised to the son, and to invest the proceeds thereof according to the directions of the will ; except the share of the personal estate and of the converted fund belonging to the complainant, which is to be paid to him absolutely. · The costs of all parties are to be paid out of the principal of the personal property ; so as to give the daughters the benefit, immediately, of all the income of their respective shares which has already accrued. And it must be referred to the injunction master in

Albany, to take all proper accounts relative to the estate ; and authorizing the executors to pass their accounts annually before him, or his successor in office, upon due notice to the parties interested in such accounts, or to their solicitors.  Liberty must also be given to any of the parties to apply to the court from time to time, upon like notice, for such other and further directions in the premises as may be necessary.