## GOODHUE and others *v.* BERRIEN.

Where the witness sworn by a commissioner of deeds, to identify the grantor in a conveyance, on the latter's appearing to acknowledge the execution of such conveyance, is the grantee therein, or otherwise interested in sustaining its execution; the certificate of the officer of its due acknowledgment, furnishes no proof of its execution.

A subscribing witness testified to his own signature to a mortgage, and that it was signed and acknowledged by a person who was introduced to him as the mortgagor. Another witness identified the signature thus made, as that of the mortgagor. *Held*, that the mortgage was sufficiently proved.

A mortgage, attested by a witness who was previously unacquainted with the grantor, is not an unattested conveyance within the meaning of 1 R. S. 738, § 137.

A mortgage was executed to secure sundry liabilities incurred for the accommodation of the mortgagor. It recited the execution of his bond of the same date and tenor with the mortgage, but no such bond was ever delivered. The mortgage was nevertheless held to be valid.

The mortgagee's claims which arose after the docketing of a subsequent judgment against the mortgagor, will be postponed to the judgment.

Where such a mortgage was given upon leaseholds and household furniture, but

was not filed pursuant to the act of 1833, till seven months after it was given, was never renewed according to that act, and there never was any change in the possession of the furniture ; it was *held*, that the entire mortgage was fraudulent and void as against creditors, although as to the leaseholds there was a change of possession.

The case of *Darling* v. *Rogers*, (22 Wend. 483,) commented upon. It does not sustain an assignment in part, where there is a corrupt intent apparent as to some other part of the instrument or of the property therein contained ; but holds that if it contain a trust unauthorized by law, inserted without any corrupt motive, such trust is not evidence of fraud, and therefore does not avoid the other portions of the instrument.

Neither a *bona fide* debt nor an actual advance of money, will sustain a security infected with fraud.

April 8, 9 ; August 5, 1845.

THIS case came before the court, on exceptions taken by Jonathan Goodhue & Co., to the report of a master, on the claims to a surplus arising upon the sale of mortgaged premises, under a decree in the suit of John L. H. McCracken, against Charles Wollen and others.

The surplus was claimed by Daniel Berrien by virtue of a junior mortgage dated September 13, 1837 ; executed to him by ·Wollen, to secure notes, drafts, &c., signed for Wollen's accommodation. Goodhue & Co. insisting that this mortgage was fraudulent as against the creditors of Wollen, claimed the surplus by virtue of a judgment in their favor against Wollen, which was docketed April 25, 1840.

The master held Berrien's mortgage to be the prior lien, and that he was entitled to receive the whole surplus.

The facts appearing before the master so far as they are material to the points decided, are as follows.

Berrien's mortgage included Wollen's household furniture situated in the dwelling he then occupied, besides certain leases or terms of years ; from one of which the surplus in question arose. The mortgage recited that it was given to secure a bond of the same date and tenor executed by Wollen to Berrien ; but no bond was produced, and it appeared by Berrien's examination, that he never had any bond.

The mortgage purported to have been acknowledged by Wollen before a commissioner of deeds, in whose certificate it was stated

that the identity of the grantor was proved to the officer's satisfaction by the oath of Daniel Berrien.

At a subsequent stage, the execution of the mortgage was further proved, by the testimony of the subscribing witness, (who was the before named commissioner,) and by proof of the handwriting of the grantor. It appeared that the mortgage was not filed in the office of the register of deeds, until April 13th, 1838; and was never renewed subsequently, by filing a copy. By the terms of the mortgage, Wollen was to pay all existing liabilities of Berrien and all renewals thereof, and indemnify him against all others, for three years. The proofs established that the liabilities of Berrien secured by the mortgage, remaining unpaid, and which had accrued prior to the entry of Goodhue & Co.'s judgment, considerably exceeded the amount of the surplus in question.

Berrien never took possession of any part of the movable property; some of it was shown to have been in Wollen's possession as late as 1841 and 1842; and Wollen had controlled and disposed of the residue. There was no objection made to the validity of the mortgage in respect of the possession of the leaseholds, and it appeared that Berrien took possession of the same about the time the mortgage was executed. Goodhue & Co. were creditors of Wollen, prior to the date of the mortgage.

*J. A. Manning* and *C. Edwards*, for Goodhue & Co.

*S. H. Thayer* and *J. T. Brady*, for Berrien.

THE ASSISTANT VICE-CHANCELLOR.—If it were clear that the identifying witness before the commissioner who took the acknowledgment of Wollen's mortgage to Daniel Berrien, was the mortgagee himself, the acknowledgment would be defective, and would furnish no proof of the execution of the instrument.

Although the testimony as to identity is for the satisfaction of the officer, yet his decision founded upon such testimony, to the effect that he is satisfied of the identity of the person making the acknowledgment, becomes by the statute as strong *prima facie* evidence of the due execution of the instrument, as his certificate

of the acknowledgment when he knows the party making it. And it cannot be tolerated that he should rely for proof of such identity upon the grantee in the deed, the execution of which is to be established by such proof. The grantee would not be competent in any court, to testify upon the question, if it became important to establish the identity; and the danger of frauds in the execution and recording of false deeds and securities would be even greater than it now is, if such a practice on the part of commissioners of deeds, were to be sustained by our courts.

It appears however, that there were two Daniel Berrien's, one of whom was distinguished as D. Berrien, Jun.; and as the word *Junior* forms no part of the name, (*Padget* v. *Lawrence*, 10 Paige, 170,) it is doubtful whether the court ought not to presume that the commissioner took the testimony of D. Berrien, Jun., for the purpose of identifying the mortgagor.

It is unnecessary to decide this, because the execution of the mortgage was sufficiently proved before the master, independent of the commissioner's certificate.

The subscribing witness testified to his own signature, and that the mortgage was signed and acknowledged by a person who was introduced to him as C. Wollen; and the testimony of J. L. Berrien identifies the signature thus made as that of C. Wollen. This was a competent mode of proving the execution of the mortgage, and sufficient if uncontradicted.

The mortgage was not an unattested conveyance within the meaning of the section of the revised statutes cited by the complainants counsel. (1 R. S. 738, § 137.) The object of the statute is to prevent the antedating of conveyances; and this is effected equally as well by the attestation of one who was previously a stranger to the grantor, as by that of one to whom he was well known.

It is next objected, that as the bond recited in the mortgage was never delivered to Berrien, the mortgage was not valid in its inception, and never had a legal existence. That there is no mortgage debt to sustain the mortgage. For the fact, reference is had to D. Berrien's affidavit before the master; and the same testimony shows in effect, that there never was any bond executed to him. The recital in the mortgage, mentioning a cotem-

porary bond of the same date and tenor, is therefore erroneous. The mortgage was nevertheless delivered, and it aimed to secure liabilities which were in no manner dependent upon the bond recited, or upon any bond.

It does not follow that there was no debt secured by the mortgage, because there was no bond. The delivery up of a bond given with a mortgage, is evidence to show a discharge of the mortgage debt; but it does not show that no mortgage debt ever existed. There is testimony here from which to infer that the bond was delivered up, and the cases cited on that subject, are not applicable.

I will notice one other objection before proceeding to the main point in the case, which is, that there was no agreement for future advances expressed in the mortgage.

As to this, I think every claim brought forward by Berrien, falls within the literal terms of the condition of the mortgage.

I agree with Goodhue & Co.'s counsel, that the claims of Berrien which arose after the docketing of their judgment, cannot take precedence of the lien of the judgment. (See *Lansing* v. *Woodworth,* 2 N. Y. Legal Observer, 250 ;(a) *Craig* v. *Graham &* *Tappin,* before Assist. Vice-Chancellor, August 17, 1844.(b))

The most important objection to Berrien's mortgage is, that it was fraudulent and void as against the creditors of Wollen.

It contained various leaseholds; and also divers articles of household furniture, set forth in a schedule and valued at $655.

The mortgage was dated and acknowledged on the 13th of September, 1837, but no copy of it was filed in the register's office pursuant to the act of 1833 relative to mortgages on personal property, until April 13th, 1838. It was never renewed after that period, as is required by that statute. It was thus distinctly fraudulent by the positive enactment of the act of 1833, so far as it was a mortgage of chattels.

Again, not an article of this personal property was ever taken into the possession of the mortgagee. The mortgage was payable at all events in three years; yet a year or two after that term

---

(a) Reported Vol. I., page 43.        (b) Now reported, ante, p. 78.

expired, some of the property remained in Wollen's possession. All of it was left with him, and continued in his possession until he made away with it, or it was otherwise dissipated.   The statute declares that these circumstances shall be presumptive evidence of fraud, and unless rebutted they are conclusive.

No reason has been offered in proof for suffering the chattels to remain in the possession of the mortgagor.   And for this cause therefore, the mortgage must be deemed fraudulent and void as to such chattels.

The case of *Darling* v. *Rogers & Sagory*, 22 Wend. 483, (S. C. 7 Paige, 272,) was cited to show that a conveyance fraudulent in part, might be sustained as to another portion of it; and it was urged that the mortgage was valid as to the chattels real which were embraced in it, even if it were void as to the chattels personal.

In the case cited, there was a provision for the trustees, in an assignment for the benefit of creditors, to mortgage real estate. This trust was unauthorized by the revised statutes, and therefore void.   The assignment contained several valid trusts, and was in other respects unexceptionable; and the court of last resort, reversing the Chancellor as to the real estate, held that the provision being merely in contravention of a statute regulating estates in land and inserted without any corrupt motive or intent, did not taint with fraud the residue of the trusts, in the instrument in which it was found.   (And see 8 Paige, 119, 120.)

The case is clearly distinguishable from the one before me. It appears that this mortgage was made with an intent to defraud creditors.   Such intent is fastened upon it, not merely by the statutes which I have mentioned, but by the rule of the common law of which the statutes against fraudulent sales and conveyances were declaratory.

True the evidence of this intent is derived from the personal property exclusively, but in the eye of the law, it is a corrupt and fraudulent motive which influenced the act ; and no one can imagine that any other or different motive dictated the insertion of the leasehold property in the mortgage, from that which is proved to have existed in regard to the personalty.

I cannot relieve any part of the instrument from the taint of

fraud which is proved to pervade it in reference to the personal property.

There is in addition, some positive evidence of the existence of the intent which the law deduces from the circumstances already considered.

Berrien testified before the master, that he did not take possession of the furniture, because the mortgage was a friendly act, and he took it for nothing more than to keep the goods out of unfriendly hands. Farther on, it appears that Berrien's language in testifying, was, that the furniture was put into the mortgage as a cover.

Such being the testimony, and the inference of law upon the facts shown, the validity of Berrien's claims cannot sustain his security. Assuming them to be all that is claimed for them, (and the proofs sustain most, if not all,) the fraudulent intent saps the foundation of his mortgage. No *bona fide* debt or actual advance of money, will sustain a security thus infected.

The exceptions to the master's report are allowed, so far as to declare the mortgage fraudulent, and that Goodhue & Co. are entitled to the surplus money. They must also recover their costs of the litigation before the master and the proceedings there, except such as were necessary to establish Goodhue & Co.'s claim to the surplus as judgment creditors.

Neither party is to have costs against the other on the exceptions and the hearing thereon.