WESTERFIELD *vs.* WESTERFIELD.

*In the matter of the Estate of .*Jane Ackerman, *deceased.*

THE Testatrix gave $6000 to her executors in trust, to apply the interest of $4000 to the support of her sons, B. and J. ; and at their *discretion* to apply the interest of the remaining $2000 in like manner ; and on the death of either of her said sons, to pay the interest appropriated for his support to her daughter R. ; and on the death of the survivor of the sons, to pay the whole of the said interest to R. for life ; and on her decease, to pay the principal sum of $6000 to R.'s children or their issue.—Held, that each of the sons was entitled to the interest of one half of $4000, which share of the income on his decease passed to his sister R.; and on her death, the principal of that share became payable to her children or their issue ; so that the absolute ownership of no part of the $4000 was suspended for a longer period than two lives in being.

Held, also, that as to the remaining $2000, part of the $6000, the appropriation of the interest of which to the support of the two sons was discretionary with the executors, and the income of which was not to be paid to R. until after the death of B. and J.,—there was an invalid suspension of the absolute ownership for three lives, and that portion of the fund went to the residuary legatee.

W. Mulock, *for the Petitioner.*
C. W. Sandford, *for the Executor.*

. THE SURROGATE. By the third clause of her will, the Testatrix set apart out of her estate the sum of six thousand dollars, " in trust and for the use and purpose, that is to say, that my executors shall apply the interest of four thousand dollars thereof to the support and maintenance of my two sons, Balaam and John ; and at their discretion, apply the interest of the residue of the said six thousand dollars ; that my executors shall be governed in such their discretion, by the actual wants and behavior of my said sons respectively, and may at times apply the whole amount of interest to their support, and at other times, withhold the same ; and that the judgment of my said execu-

tors, and of the survivor, shall be conclusive and binding; that upon the death of either of my said sons, the interest appropriated for his support shall be paid to my daughter Rachel; and at the decease of the survivor, the whole of the said interest of the said six thousand dollars shall be paid to my said daughter during her natural life; and immediately after her death, the said principal sum of six thousand dollars shall be paid to the children of my said daughter Rachel, share and share alike, with whatever accumulation of interest thereon may remain, and if any of the children be dead, their issue to take the part their parent would if living." Cornelius Westerfield, the husband of Rachel, is the executor, and John, Balaam, and Rachel, who were all living at the decease of the testatrix, are now dead. John received the interest of two thousand dollars during his life, and on his death, and that of Rachel, her children for a time received the interest, and ultimately the principal of that part of the fund. The remaining $4000 was retained by the executor, the interest of but $2000 thereof, having been paid to Balaam during his life. William E. Westerfield, one of the children of Rachel, now calls upon his father, the executor, to distribute the remaining $4000, and the executor objects that the trust is void, and that the fund passed to Rachel as residuary legatee, under the last clause of the will.

The trust itself, so far as its objects are concerned, independent of the statutory provisions relating to future or contingent estates, is valid. Express trusts of personal estate may be created for any purposes which are not illegal. (*Gott* vs. *Cook*, 7 *Paige*, 534.) The proposition to be solved, is, whether the absolute ownership of the property is suspended for more than two lives in being. The direction of the testatrix is, "to apply the interest of four thousand dollars to the support" of her two sons, and "upon the death of either," "the interest appropriated for his support," is to be paid to her daughter Rachel for life, and after her death, to her children, share and share alike. As

to the interest of the residue of the $6000, a large discretion is given to the executors to apply it to the use of the sons. It is clear that a distinction is to be made between parts of this fund, which has thus been divided by the testatrix into two portions,—one of $4000 required imperatively to be applied to the support of the sons, and the other of $2000, to be left in the discretion of the executors during the lives of the sons.

1. As to $4000 of the fund, it seems to me the manifest intention of the testatrix, to appropriate the income to the support of the two sons, and that each of them had a right to compel a performance of the trust as to one half the interest, no discretion being given to the executors as to the amount. The principle laid down in § 98, 1 *R. S.*, *p.* 734, would be fairly applicable to the case, and the income having been intended for the support of both, " without any specification of the share or sum to be allotted to each, all the persons designated shall be entitled to an equal proportion." The true meaning of the testatrix is made more apparent, in consequence of her having expressly given a discretion to the executors, as to the interest of $2000, thereby raising an irresistible implication, that as to the income of the balance, no such discretion was intended.

It is true, that up to the period of the death of one of the sons, the whole fund would remain an entirety in fact, but that is no objection, if the interests in it were several. What we are now seeking to discover is, whether by any possibility any part of this $4000 could be kept by virtue of the trust, in the hands of the executors, for a longer period than two lives in being. Survivorship is the characteristic feature, or effect, of a joint-tenancy. In the present case there could be no survivorship as between John and Balaam, because the testatrix limits over the interest of each of them, on his death, not to the other, but to Rachel. Whenever either John or Balaam died, the share or interest of the survivor could not be increased, but the interest of the deceased went over to another person. A

simple bequest to A and B is a joint-tenancy, but the legal implication is overruled, if some part of the context shows that the words are not to have their legal operation. The bequest over to Rachel, on the death of either of the sons, is an express exposition of the intention of the testatrix, that there should neither be a joint-tenancy, nor cross-remainders; and it is explanatory of the sense in which she intended the provision for the first life-tenants, showing that the idea of a survivorship between them was excluded, and the contingency of the death of either, explicitly provided for, by limiting over "the interest appropriated for his support," after his decease, to her daughter Rachel. This ousts the implication or construction of a joint-estate or interest. It implies, also, that there was "interest appropriated" for the support of each, as to which no discretion existed, except as to the mode of application, and which, on the death of either, was to be paid to Rachel. It is the duty of the Court to seek out the fair meaning of the testatrix, and endeavor to support rather than defeat her purposes. I have expressed what seems to me the only rational construction of the language of this will, and this interpretation works out in effect, all the results flowing from a tenancy in common, giving to each of the sons a right to the interest of one half the $4000, and on his death, passing over his share of the income to his sister, and on her death, vesting the right to so much of the principal in her children, thus terminating the trust as to that portion. (*Van Vechten* vs. *Van Vechten*, 8 *Paige*, 104.) In this view there is no part of the $4000 which, in pursuing the terms of the will, can be kept from vesting in the children of Rachel for a longer time than two lives. The income of two thousand dollars is appropriated for the successive lives of John and Rachel, and on their decease, the principal is payable to her children; and the income of the other two thousand dollars, is appropriated for the successive lives of Balaam and Rachel, and on their decease, the principal is likewise payable to her children.

2. The disposition of the interest of $2000 of the fund, is left in the discretion of the executors; they may apply it to the support of the testatrix's sons, or may withhold it. It is only on the decease of the survivor of John and Balaam, that the income of the *whole* is to be paid over to Rachel, and it is therefore only on the termination of two lives, that this interest is to be paid to a third life-tenant. This is on the face of it, a longer suspension than the law authorizes. To carry out the intention of the trust and confidence reposed in them, this part of the fund must be retained by the executors till both sons are dead, and not till then does the duty arise to pay the interest to the daughter.

It was urged on the argument, that §§ 17 and 19, 1 *R. S., p.* 723, could be fairly applied in this emergency of the case. Those sections express an effort on the part of the Legislature, whilst striving to prevent perpetuities, to approach as near the intention of the testator as possible, in accordance with the equitable doctrine of *cy près*, which in regard to wills has always prevailed at Common Law, and which as to deeds, is substantially incorporated in the Revised Statutes. (1 *R. S., p.* 748, § 2.) The 17th section declares, that where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled, shall be void, and upon the death of those persons, the remainder shall take effect in the same manner as if no other life estates had been created. The difficulty in applying this section grows out of the fact, that the first limitation of the income of the part of the fund now in question, depends on the *joint* lives of the two sons, which of course are not *successive*, but *concurrent* lives. The 19th section does not reach the case; the life estates there referred to, being those mentioned in the 18th section, viz.: estates "for the life of any other person or persons, than the grantee or devisee of such estate." Were, however, these sections applicable, so as to authorize the Court to disregard the life

interest of Rachel in the income of this $2000, after the death of John and Balaam, and accelerate the remainder, so as to make it take effect on the death of the two sons, there is still an insuperable objection. As defined in the 14th section, the absolute power of alienation is suspended, " when there are no persons in being, by whom an absolute fee in possession can be conveyed." If, on the death of the two sons, the remainder is to be accelerated and to vest immediately in Rachel's children, the question is, who are Rachel's children and how are they to be ascertained? The persons who are to take under that term cannot be known till her decease. The provision of the will is, that the remainder shall go to her children, or if any of them be dead, to their issue. During her life, no one can say who shall be living at her death to take; perchance she might survive all her children, and then their issue would become entitled; so long as she should live, none of her children could claim, or dispose of the fund, for whether or not they should have shares in it, or death intervening, their children should take the shares, is all entirely contingent on the fact, whether they survive Rachel. (*Coster* vs. *Lorrilard*, 14 *Wendell*, 300, 301, 303, 311. *Chief Justice Savage's Opinion*.) The persons to take must be in existence at Rachel's death; who they may happen to be is uncertain, till the fact is fixed by her decease. Here there is another life entering as an ingredient into this limitation. The remainder is contingent until John, Balaam and Rachel, are all dead, because no persons by whom an absolute ownership, or estate in possession can be conveyed, can be ascertained before that period. The power of alienation as to this part of the fund, is suspended, therefore, during three lives, and the trust to that extent is void.

It follows that the executor is bound to account to the children for four thousand dollars only, as to which the trust was valid; and as to the balance of $2000, that it passed to the residuary legatee.