In Special Term—January 1855.

GHOLSON, J. presiding.

### JOHN SWASEY & Co. *vs.* WILLIAM LAYCOCK.

In a common law submission, the right to enforce the award by action is, as a general rule, clear, and the contract of the parties by which this right is taken away, should be express. The fact, that the award may be enforced in another mode, constitutes no bar to the action.

An award may be set aside for a *mistake of law*, but not for *error of judgment* as to the law. If the arbitrator without investigation, or without any *exercise* of his *own judgment*, erroneously *assumes* the law, then the award may be set aside, if it appears on its face that it was based on such erroneous assumption; but if he exercise his *judgment* as to the law, it is conclusive.

GHOLSON, J.

This action is brought on an award, directing the payment of $2509.89, assessed by the arbitrators as damages for the non-performance of a contract in relation to

the sale of 5000 pieces of bulk sides. The submission and award have been set out in the petition, and the defendant has filed a demurrer, on the ground, that there is no sufficient cause of action.

I shall proceed to examine and decide the points argued before me, in the order in which they were presented by counsel, referring as to each point, to that part of the petition, the submission and award appertaining thereto.

It is *first* claimed, that no action will lie on the award, because the submission shews, that the parties intended that it should only be enforced by another proceeding, specially pointed out. The ·submission shows, that the plaintiffs had obtained a judgment by default, against the defendant, in the Court of Common Pleas, for a breach of the contract stated above; that the defendant had grounds, on which he expected to set the judgment aside. And, thereupon, the original matter in controversy was referred to arbitration; the judgment was to stand as a security for the performance of the award; if nothing was found to be due on the judgment, its satisfaction was to be entered; if less than the amount of the judgment was found to be due, the excess was to be remitted; and in case any sum should be found due under the original cause of action, which was in no case to exceed the amount of the judgment and interest, then the defendant was to pay the amount so found to be due, with the costs in the Court of Common Pleas, within ten days from the rendition of the award, and, in default of such payment, the plaintiff might issue execution on the judgment for the amount of the award.

It appears to me, that there is nothing in the submission, or in the general principles of law, applicable in such

a case, to debar the plaintiff from an action on the award, to recover the sum found to be due. It is the policy of the law to amplify its remedies, and, without usurping jurisdiction, to apply its rules to the advancement of substantial justice, 9 *M. & W.* 818. It may be most important to the plaintiff to have the validity of his award, and the right to enforce it, tested in the ordinary mode by action. Any execution issued on the judgment, mentioned in the submission, might be subject to be set aside on a summary application. As a general rule, an action to recover the amount to be paid under an award is maintainable. 1 *Chitty Pl.* 109. To take away such right of action would require, in my opinion, a provision more clear and express, than any found in this case. Elder *vs.* Rouse, 15 *Wend.* 218.

At common law an action of debt might have been maintained on a judgment of one of the superior courts of record. 1 *Chitty Pl.* 111; 1 *Salk.* 209. So it seems now to be held, that an action of debt is maintainable on the order or decree of a Court of Equity, directing the payment of money. 3 *Caines' R.* 22; 9 *S. & R.* 261; 51 *E. C. L. R.* 295. The right to enforce the judgment or decree, otherwise than by action, constitutes no bar, and a like reason appears to apply to the award in this case.

Indeed, the provision in the submission, that execution might be issued on the judgment, it having been already stated that the judgment was to stand as a security, seems to have been superfluous. There is, surely, nothing in that provision which prohibits the right of action, secured by the general principles of law.

The cases, which have been cited as to submissions to be made a rule of Court, or awards to be enforced under

the provisions of particular statutes, have no application, I think, to the present. They may well stand on the rule of the common law, that upon a new statute which prescribes a particular remedy, no remedy can be taken but the particular remedy prescribed by the statute. Moyer *vs.* Risby, 14 *Serg. & R.* 162–165. An award under a submission, to be made a rule of Court, and in pursuance of an express statutory regulation, is rather a legal proceeding in the course of justice, not consummate until acted on in the mode prescribed, and such action alone may well be deemed to have been in the contemplation of the parties. It is not claimed that our statute, regulating arbitrations and authorizing the submission to be made a rule of Court, in any respect invalidates a common law submission, not to be made a rule of Court, such as is the submission in the present case. The award, then, stands on the contract of the parties, and steers clear, in respect of the remedy upon it, of the principle which might be considered applicable to the other class of cases.

It is next claimed that the award is invalid. The arbitrators have shown, on the face of their award, the grounds of their decision; one of those grounds is founded on a legal proposition, which is claimed by the defendant to be incorrect.

Before proceeding to examine the proposition, as to which it is alleged the arbitrators have erred, it is proper to enquire, how far, and in what respect, an error in an award, as to a matter of law, may be examined. On this point the authorities are neither clear, nor consistent. See 6 *Pick.* 155.

One cause of the apparent conflict, in some of the cases, probably grows out of a misunderstanding of the sense in

which words have been used.   When it is said, that an award may be set aside for a *mistake of law*, apparent on its face, does the term "mistake of law," necessarily embrace *an error in judgment*, on a controverted point of law?

In a very important case in Massachusetts, Boston Water Power Co. *vs.* Gray, 6 *Metc.* 131, 166–168, in which the whole doctrine on this subject was thoroughly discussed, it is said : "When the parties have, expressly, or by reasonable implication, submitted the questions of law, as well as the questions of fact, arising out of the matter of controversy, the decision of the arbitrators on both subjects is final.   It is upon the principle of *res adjudicata*, on the ground that the matter has been adjudged by a tribunal which the parties have agreed to make final, and a tribunal of last resort for that controversy ; and therefore it would be as contrary to principle, for a court of law or equity to rejudge the same question, as for an inferior court to rejudge the decision of a superior, or for one court to overrule the judgment of another, when the law has not given an appellate jurisdiction, or a revising power, acting directly upon a judgment alleged to be erroneous. * * * * But where the whole matter of law and fact is submitted, it may be open for the court to inquire into a mistake of law, arising from matter apparent on the award itself; as when the arbitrator has, in his award, raised the question of law, and made his award in the alternative, without expressing his own opinion; or, what is perhaps more common, where the arbitrator expresses his opinion, and, conformably to that opinion, finds in favor of one of the parties ; but if the law is otherwise, in the case stated, then his award is to be for the other party.   In such case, there is no doubt, the Court will consider the award con-

clusive as to the fact, and decide the question of law thus presented.

" Another case somewhat analogous, is where it is manifest, upon the award itself, that the arbitrator intended to decide according to law, but has mistaken the law. Then it is manifest, that the result does not conform to the real judgment of the arbitrator. For then, whatever his authority was to decide the questions of law, if controverted, according to his own judgment, the case supposes that he intended to decide as a court of law would decide ; and therefore, if such decision would be otherwise, it follows he intended to decide the other way."

The two first instances put under the head of a "mistake of law," in the above extract, are not properly so classed. One supposes no decision made on the part of the arbitrator ; the other, that the question decided is intended to be re-examined, and the judgment of the arbitrator, if erroneous, corrected, and the award is expressly made with such a view. The last case is really the only one, in which there may be properly said to be a mistake of law, apparent on the award and open for inquiry. Now, what is the character of such a mistake of law, as described in the last paragraph extracted from Metcalf's Reports, I must confess, is not made entirely clear, to my mind, by the description there found. And, yet, it seems that the mistake of law there intended is something different from an erroneous judgment on a question of law, controverted by the parties, and decided by the arbitrator.

A like description of a mistake of law, apparent on the award, is to be found in the other cases. In the case of Bell *vs.* Price, recently decided in New Jersey, it is said : " In regard to mistakes in law, courts will not interfere,

unless it appears that the arbitrators meant to decide according to the legal rule, and had mistaken it; and it must so appear on the face of the award, or by the statement of the arbitrators. If arbitrators mean to decide according to law, but mistake the rule in some palpable and material point, in such case the award will be set aside, as not conformable to their real judgment and intention. But, unless they intend to be bound by the legal rule, courts will not withdraw the matter from the tribunal which the parties themselves have selected. The courts will not undertake to inquire, whether the conclusion was right or not, unless they can see that, professing to decide according to law, the arbitrators had decided contrary to law." 2 *New Jersey* 578–590. In the case of Crabtree *vs.* Green, 8 *Geo.* 8–20, it is said the mistake must appear on the award itself, and even then "it must be in a case when the arbitrator, intending to apply the law correctly, has mistaken what the law is." And a case is given in illustration, when the arbitrator mistakes the period fixed by statute for bringing an action, and decides under the influence of such a mistake.

The judge in that case says: "I apprehend that no case is to be found, when the question of law being submitted distinctly, and the judgment being on that question, nakedly, that the judgment has been opened because of a mistake of law." In this remark it is obvious, that the judge uses the term "mistake of law" in the same sense in which it would be said, that there had been an erroneous judgment on a point of law, and for such a mistake of law holds that there can be no relief.

This kind of mistake of law is referred to in a very recent case in England, by Wilde, C. J., Fuller *vs.* Fen-

wick, 3 *C. B.*, 54 *E. C. L. R.* 705–711, who says: " The question as to how far the Court will interfere to correct the mistake of an arbitrator in fact or in law, has been presented in every possible shape. In some of the cases the discussion has proceeded upon a supposed difference, where matter of law was in question, between a lay and a professional arbitrator. Lord Ellenborough first, and, subsequently, all the judges, repudiated any such distinction, holding, that when parties have thought fit to withdraw from the decision of the ordinary tribunals, and have selected their own judge, they must be content to abide his judgment. The question has also been discussed in cases, where some point of law has suddenly arisen in the course of the inquiry, and where, though the matter was present to the mind of the arbitrator, but little time was afforded for consideration ; and the courts have said, that whether the arbitrator was a professional man or a layman, they would not inquire whether his conclusion was right or not, unless they could, upon the face of the award, distinctly see that the arbitrator, professing and intending to decide in accordance with law, had unintentionally and mistakenly decided contrary to law. The question, therefore, is, whether we can, from what appears on the face of the award, come to the conclusion that the arbitrator has decided this case in violation of some known principle of law."

And here, again, it is not entirely clear, especially in view of the last remark, whether an error in judgment, by deciding contrary to some *known principle of law*, appearing on the face of an award, might not be considered a mistake in law. The last remark, however, it is proper to observe, was probably made in view of the particular case before the court.

It has been repeatedly held, both in England and in this country, that if a question of law be referred to an arbitrator, he must decide upon it, and though he decides wrong, it cannot be helped, Ching *vs.* Ching, 6 *Ves. Jr.* 282. The principle upon which this stands, is stated in Young *vs.* Walter, 9 *Ves.* 364. It is, that such is the agreement of the parties. If they " mean by the reference to say, that *A's* law shall be the law between them, they are competent so to agree." In the same case, on a subsequent day, Lord Eldon referred to the case of Keat *vs.* Estob, 3 *East* 18, in which the Court of King's Bench was supposed to lay down a contrary doctrine, and says that there is no clashing between them. " Mr. Justice Grose puts it upon a principle, which I think clearly right; that the arbitrator meant to determine according to law; and was mistaken. Mr. Justice Lawrence also says, that from his reasons it clearly appears, that he has mistaken the law upon which he meant to proceed. They understood the arbitrator, as stating upon the face of the award, that, if his award is not according to law, he does not mean it shall be his award."

That a mistake of law has been placed on the same footing with a mistake of fact, and by no means supposes that there has been an erroneous judgment after inquiry into the question, is shown by remarks of Holroyd, J. in Richardson *vs.* Nourse, 3 *B. & Ald.* 237 ; 5 *E. C. L.* 271. " The court will not set aside an award on the ground merely, that an arbitrator is mistaken in a point of law; but the court must be clearly satisfied that he would not have made such an award, if he had known what the law was. Now I am by no means certain, in this case, that if the arbitrators had known the law to be what it is con-

tended to be on the part of the plaintiffs, they would have
come to a different decision." Precisely the same thing
has been frequently said of a mistake of fact; it must be
such a mistake, that had it been known to the arbitrators,
they would not have awarded as they have done; and it
was formerly the practice to take and offer the affidavit
of the arbitrators to that effect. That there is a distinc-
tion between a mistake and an erroneous judgment, is also
shown in the opinion in Knox *vs.* Symmonds, 1 *Ves. Jr.*
369. " A party to an award cannot come to have it set
aside upon the simple ground of erroneous judgment in
the arbitrator, for to his judgment they refer their dis-
putes, and that would be a ground for setting aside every
award. In order to induce the Court to interfere, there
must be something more; as corruption in the arbitrator,
or gross mistake, either apparent upon the face of the
award, or to be made out by evidence; but in case of
mistake it must be made out to the satisfaction of the ar-
bitrator, and the party must convince him, that his judg-
ment was influenced by that mistake; and that, if it had
not happened, he should have made a different award."
It need scarcely be observed how completely the princi-
ple, thus stated by Lord Thurlow, is applied by Holroyd,
J. to the case of a mistake of law.

It will have been observed, as a striking point in the
description of a " mistake of law," on the part of an ar-
bitrator, as found in the cases I have cited, that it appears
on the face of the award, that the arbitrator " intended
to decide according to law, but has mistaken the law."
There is a difficulty growing out of the expression " in-
tended to decide according to law;" for it may well be
said, that in every case, when the award shows on its face

the decision of a legal question, the arbitrator intended that such decision should be in accordance with law. And yet, the expression, consistently with the authorities, cannot be so understood. It must mean that the arbitrator intended to decide, not according to his own opinion or judgment, then formed on enquiry or examination, but on the supposition, or the taking for granted, that what he decided was according to law. He intended to decide according to law, as the law might be, and as he supposed it to be, not as in his opinion it was, or, to use the common phrase, as he judged it to be. His memory merely, the dictation or information of another, gave him the law, and so he supposed the law to be, not his judgment, reflection, or thought. To him the proposition of law, on which he acted, stood precisely in the same attitude as a fact. Indeed, a contract, made in reference to the law of a foreign country, the existence of which is deemed a fact, and a mistake as to which stands on a like footing with a mistake of a fact, may be considered an analogous case. And here, it may be said, the principle upon which an award is set aside for a mistake of law, seems to be analogous to that on which the Supreme Court of Ohio, in the case of Evants *vs*. Strode, 11 *Ohio* 480, have laid down the doctrine, that contracts may be relieved against for a mistake of law. A submission and award in truth amount to a contract to do the thing awarded.

According to the above view, it would not, I think, be difficult to distinguish a mistake of law, which might be corrected, from an error in judgment which must be deemed conclusive as the decision of a tribunal of the last resort established by the agreement of the parties. There are authorities, however, apparently conflicting with this view,

which it is not proper that I should pass unnoticed. There is a case decided by Judge STORY, Kleine *vs.* Catara, 2 *Gallison* 61, in some respects a leading case on this subject, in which occur the following remarks: "If, however, the referees mean to decide according to law, and mistake, and refer it to the Court to review their decision, (as in all cases, where they specially state the principles on which they have acted, they are presumed to do,) in such cases, the Court will set aside the award, for it is not the award which the referees meant to make, and they acted under a mistake. * * * * * Here the referees have expressly laid the grounds of their decision before us, and have thereby submitted it for our consideration. This course is not much to be commended. Arbitrators may act with perfect equity between the parties, and yet may not always give good reasons for their decisions; and a disclosure of their reasons may often enable a party to take advantage of a slight mistake of law, which may have very little bearing on the merits. A special award, therefore, is very perilous; but when it is once before the Court, it must stand or fall by its intrinsic correctness, tested by legal principles."

The submission in the case of Kleine *vs.* Catara was under a rule of court, and the remarks which have been quoted, may have been made, though it does not so appear, in view of some local law or practice applicable to awards under such a submission. If those remarks can be supposed to apply to an ordinary award, under a common law submission, such as the one in the present case, I must say, that in several important respects they conflict with the principles laid down in the numerous cases I have before cited.

44

If it be competent for parties to agree, as Lord Eldon said it was, that A's law shall be the law between them, and A, thereupon agrees to give them his law, I cannot see what right A has to give them the law of another man or the law of a court. If he has, then what the parties intended to be the end of controversy may be made the beginning of litigation. If the parties intended that the judgment of the arbitrator upon the questions of law and fact should determine their controversy, it is difficult to see what right he would have by making a special award showing the grounds of his decision, to substitute the judgment of a court. As to the remark that a slight mistake of law, having very little bearing on the merits, may be sufficient to set aside an award, I need not comment. It was in view of such a proposition, that Chancellor Walworth said in Campbell *vs.*Western, 3 *Paige* 124-138, "If such is the law of this court, then, indeed, is the right of parties to submit their differences to arbitrators, a curse, rather than a blessing."

According to the principles, which, after an examination into the authorities somewhat protracted and tedious, I feel to be obligatory upon me in deciding upon the validity of the award in this case, and which have been sufficiently stated in the course of that examination, there can be no doubt as to the conclusion to which I must arrive. It cannot be denied that the error of the arbitrators, if any, in their decision of the questions of law which arose in the case was made after inquiry,—was an error in judgment, and not a mistake of law in the sense in which I have endeavored to explain that term.

There are some expressions in the submission from which it might be claimed, that the arbitrators were not

J. Swasey & Co. *vs.* W. Laycock.

vested with the power to make a final decision, and that a re-examination before a legal tribunal was intended. Upon an examination of the submission, I do not think it can bear that construction. And though the arbitrators may have been required to proceed according to the rules of law, they were made the judges of what were the rules applicable to the case, and the parties intended that their decision in that respect as in all others touching the matter in controversy should be final and conclusive.

There is another class of cases, which it may be proper to mention, though it is not claimed that this case comes within the principle upon which they stand: partiality or misconduct on the part of an arbitrator. It may well be that an award is so clearly illegal—so contrary to natural right and justice as to afford evidence from which partiality and misconduct may be inferred. And I am not sure that it is not the tendency of modern decisions in England to refuse to interfere in cases of mistake of law, unless it appear to be of a character to lead to such a presumption.

Under these views, it is not necessary that I should examine the other very interesting questions which were argued before me with so much learning and ability. If I were to do so, I might perhaps say in language before quoted, that it is "by no means certain from what appears on the face of the award that if the arbitrators had known the law to be what it is contended to be on the part of the defendant, they would have come to a different conclusion." And, unless I were satisfied that the mistake was of such a character, that had it not been made, the conclusion would have been different, I should feel great hesitation in setting aside the award.

The demurrer will be overruled.