DARLING and others, *appellants*, and ROGERS & SAGORY, *respondents*.

An assignment of *real estate* for the benefit of creditors, *upon trust*, to *sell* or *mortgage* the same and apply the proceeds to the payment of debts, is a valid instrument under the statute of uses and trusts as to the trust *to sell*, notwithstanding that the trust *to mortgage*, being for the benefit of *creditors at large*, is void. The rule *ut res magis valeat quam pereat* governs in such a case, and applies as well where what is void is declared so *by statute*, as when it is so *at common law*, unless the prohibitory enactment declares that *the deed* by which the thing be done *shall be void*.

*It seems* that had the trust *to mortgage* been created for the purpose of raising funds to pay *charges* upon the land, such as judgments and mortgages, it would have been held *valid*.

APPEAL from chancery. On the 12th November, 1836, Thomas Darling made an assignment of *all his real and personal estate* to Leonard Kip and Joseph F. Darling, and accompanied the assignment with five *deeds* of the same date, conveying specific parcels of real estate to his assignees, which deeds were executed by him and his wife. The property assigned and conveyed by a schedule accompanying the papers was valued at $94,724. In the assignment it was stated, that the object of the assignor in its execution was to make over and secure to his creditors, or to the assignees in trust for them, all his estate real and personal. The trusts declared were that the assignees should, with all due diligence, *sell* and dispose of the estate, *real and personal*, at auction or private sale, for the most moneys that could be gotten for the same, or to *mortgage* the *real estate*, or any part thereof, as they should deem most advisable and best calculated to be the most productive and advantageous; and collect the debts; and, from the *proceeds* after deducting costs, charges and expenses, pay certain *preferred creditors*, whose debts were estimated at $70,082,43, and with the residue of the *proceeds* pay and satisfy the *remaining creditors* of the assignor. Then followed a *power of attorney* to the assignees to collect debts. In October, 1837, the respondents filed a creditors' bill in the court of chancery, alleging the obtaining of a judgment in their favor and

a return of *nulla bona*, &c. and charging the assignment of the 12th November, 1836, to be *fraudulent*, praying a discovery, that the assignment might be declared void and a receiver appointed, and also praying for an *injunction* restraining the assignor from disposing of any of his property, and restraining the assignees from *selling, mortgaging* or otherwise encumbering the property assigned to them, or parting with the same in any way, until the order of the court.    The assignor and assignees put in separate answers, acknowledging the assignment, but *denying all fraud*, &c. In April, 1838, a motion was made by the complainants below for the appointment of a *receiver*, and at the same time a motion was made by the defendants to dissolve the injunction which had been granted according to the prayer of the bill.    The CHANCELLOR thereupon made an order adjudging and declaring that *no estate* in the *real property* of Thomas Darling vested in the assignees by virtue of the assignment and conveyances executed to them, and made a reference to a master to appoint a *receiver* of the rents and profits of the real estate, authorizing him to execute leases, and requiring the assignees to give their assent to the leases. As to the motion to dissolve the injunction: the Chancellor *denied* it as respected the *assignor*, and in respect to the assignees, *modified* it as it regarded the *real estate* so far as to authorize the assignees to sell the real estate in case the *receiver* approved the sale : the purchase money to be deposited in a trust company, and in case of sales on credit, the bonds and mortgages to be taken in the name of the assistant register and deposited with him.    In respect to the *personal property* assigned, the injunction was wholly dissolved.    From the order thus made the assignor and assignees respectively appealed.    The appeal was argued in this court by

*A. L. Robertson & S. Stevens,* for the appellants, who argued that *fraud* being denied and not proved, the assignment was valid unless rendered void as creating a trust not authorized by the statute.    The general object of the assignment in respect to the *real estate* was to convert it into money

Darling v. Rogers.

for the benefit of creditors, and to accomplish that intent the assignees were authorized by the assignment to *sell* or *mortgage* the property. Both trusts were valid within the provisions of the statute. The trust to *sell* is indisputable, and the trust to *mortgage* is equally so when conferred to be exercised *for the benefit of creditors.* But if otherwise, the latter trust cannot destroy the former ; only that trust which is unauthorized is void, and that which is authorised, viz. the *trust to sell,* remains. They further argued that if the assignment should be deemed void as creating a *trust* not authorized by the statute, it is valid as creating a *power in trust,* and if so, the Chancellor erred in directing the property to be placed in the hands of a receiver ; and if the authority to *mortgage* is not authorized either as a *trust* or *power in trust,* and the *trust to sell* falls with it, then the interest of the *cestuis que trust* in the lands is converted into a legal estate. They also insisted that the decretal order was erroneous is assuming jurisdiction for the court of chancery, in a case where fraud could not be assumed, to apply the real estate of a judgment debtor to the satisfaction of the judgment ; and was also erroneous in compelling the assignees to use the estate granted to them to protect leases made by the receiver.

*F. B. Cutting,* for the respondents, submitted and insisted upon the following points :

I. The express trust contained in the assignment to *sell or mortgage* the real estate assigned for the benefit of creditors, is prohibited by the article of the revised statutes relative to uses and trusts.

II. The express trust *to mortgage* the assigned property, being an express trust not authorized by the revised statutes, no estate vested in the trustees by the assignment.

III. The absolute conveyances of the land executed at the time of the assignment, by Thomas Darling and his wife, if considered as a part of the assignment, conveyed no title whatever to the trustees. If considered as separate and distinct instruments, they are void as against the complainants, being absolute conveyances of the debtor's property, without consideration.

IV. The assignment was an attempt by a debtor in failing circumstances, to place his property beyond the reach of creditors, by creating a trust estate in the hands of his assignees, which would operate to delay and hinder the collection of debts. The assignment is for this reason void as against the complainants.

After advisement, the following opinions were delivered:

By Justice Cowen. I am inclined to think that the only question necessarily involved in the order appealed from, relates to the validity of the assignment from Thomas Darling. This must be taken to have been executed with perfect integrity of purpose, for fraud is denied by the answers, and there is no proof to establish its existence; nor can it be inferred from the character of the deeds by which the assignment was effected. These were executed with the requisite solemnity, and were sufficient in form to transfer all Darling's interest in his real and personal property. The trust declared was, it is admitted, valid in respect to the *personal estate;* and would have been equally so of the *real estate,* for the purpose of *selling* it, had it been confined to that. The 1 *R. S.* 722, 3, *2d ed.* § 55, of the article concerning uses and trusts, allows *express* trusts, 1. "To *sell* lands for the benefit of creditors; 2. To *sell, mortgage* or *lease* lands for the benefit of legatees, or for the purpose of satisfying any charge thereon;" and by the previous section, 45, uses and trusts, except as authorized and modified by that article are abolished. The article no where authorizes, in terms, an express trust to *mortgage* lands for the benefit of creditors; and though, as a general rule, a trust *to sell* land and distribute the proceeds shall be construed liberally, and might include a power *to mortgage,* yet, when the two subdivisions cited are read in connection, there is great difficulty in saying that the legislature did not here use the former words in their strict sense, which, when applied to *lands,* would only confer the power to give a deed of bargain and sale. In the very same section, indeed the same sentence, the words *sell* and *mortgage* are evidently used to express different

Darling v. Rogers.

meanings, though applied to the same subject, and employed for the same general object, the distribution of the proceeds. I am, therefore, inclined to think that the assignment failed in the attempt to raise a trust for *mortgaging* these lands. It was among the express trusts which were abolished by the 45th section ; and perhaps it would not vary the result in the present stage of the cause, should we think the attempt might avail as a *power in trust.*

My opinion is that it cannot be allowed as an *express* trust. But then the more material inquiry arises, whether a failure in this particular shall destroy the whole deed. The same instrument is employed to convey both the personal and real property. I speak in the singular, for all the deeds are but one instrument. The law allows the trust to be valid in respect to the personal property ; and the learned Chancellor himself does not disturb this in the hands of the assignees. The same breath created a trust equally legal in respect to the real estate, a trust, *to sell* for the benefit of creditors. So far the assignor had complete power, and he exercised it. He conveyed his real and personal estate, in trust to be *sold,* and have the proceeds distributed among his creditors. The whole is one trust created by the same words. The assignment is thus complete, answering to the intent of the parties and legally operative. It is admitted to be honest and conscientious.

But a clause has found its way into this instrument, by which it is declared, not only that the assignees may sell the real and personal property, and collect debts and distribute the proceeds in payment of creditors ; but the scrivener has added, what is perfectly void—that the trustees may also in their discretion *mortgage* that part of the property which lies in the shape of land ; and this is interposed as an objection, to subvert the whole transaction. I mistake. The nullity is admitted to be innoxious, with regard to one part of the trust clause to sell—that is left to operate ; but over the other half it is said to come like a paralysis, rendering the assignment wholly inoperative with regard to the real estate. The addition is innocent in its own nature, and was probably inadvertent, arising from the scrivener's

following old precedents. The power to mortgage is generally but a matter of form in these assignments for the benefit of creditors; for no one supposes that any thing short of a sale for the full value will answer the exigency of the case; and the legislature, unwilling to multiply idle trusts, took away the power to sanction a mortgage by way of express trust. I can think of no other motive; for, under possible circumstances, a trust to mortgage might be proper. But the whole is a mere question of authority. The debtor has given a deed with trusts which are perfectly valid to a certain extent; he has completely exhausted the power conferred by law in raising a trust to sell; and the question is whether, because in one idle particular he happens to have gone beyond his strength, and failed, every thing that is well done must fail with it. I think all must agree that there is nothing in the nature of things which calls for such a result. No authority was cited on the argument; none by the learned chancellor, in the course of his opinion, giving the least countenance to the doctrine that the provisions in a deed which are in themselves available shall be frustrated by any effort of the grantor to create a right, or impose a condition or restriction, which is void, as being beyond his legal power. I therefore feel authorized to say there is no such authority. It shall be my business to show that there are several the other way. I know of none which gives the least color to the objection which is raised against this deed operating, as far as its provisions are lawful; and, from the great number of authorities which go to support it, I feel authorized to infer that there is no book of the law which, when correctly understood, ought to leave us in doubt.

The principle on which judges are called to act in regard to all contracts and assurances is, *ut res magis valeat quam pereat:* that is to say, the instrument in question should rather be made available than suffered to fail. But I do not propose to detain the court with analogies drawn from this rule, as applied to instruments of a character other than that which is under consideration. That the maxim is applicable to every sort of writing by which legal rights

Darling v. Rogers.

are created or transferred, may serve to admonish this high tribunal of the great danger, under any circumstances to be apprehended, of weakening its force or narrowing the sphere of its operation ; but the case in hand, which raises the inquiry upon a *deed*, will, I think, be found entirely disposed of by the force of direct authority. Before going to that, however, I will call the attention of the court to the general direction which the statute has given to us. The 2 *R. S.* 740, § 2, *2d ed.* directs, that " in the construction of every instrument creating or conveying, or authorizing the creation or convey-ance of any estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instru-ment, and is consistent with the rules of law." In framing this statute, I have no doubt, the revisers had in view the re-marks of Lord Chief Justice *Hobart*, in the *Earl of Clan-rickard's case, Hob. R.* 277. He says : " I do exceedingly commend the judges that are curious and almost subtil, *astuti,* (which is the word used in the proverbs of Solomon, in a good sense, when it is to a good end,) to invent reasons and means to make acts according to the just intent of the par-ties, and to avoid wrong and injury which by rigid rules may be wrought out of the act." This remark is cited and approved by Lord Chief Justice *Hale* in *Crossing* v. *Scudamore,* 1 *Ventr.* 141, and again by *Willes,* Ch. J. in *Roe, ex. dem. Wilkinson* v. *Tranmarr, Willes' R.* 682, 4 ; 2 *Wils.* 75, 78. *Willes,* Ch. J. in the latter case cites *Shep. Touch.* 82, 3. At page 87 of that work, *Rule* 5 on the construction of deeds is thus laid down : that it be such " as the whole deed and every part of it may take effect, and as much effect as may be to that purpose for which it is made, so as when the deed cannot take effect according to the letter, it be construed so as it may take some effect or other." The rule is well illustrated in *Bredon's case,* 1 *Rep.* 76, where several cases are given of attempts to grant estates of greater extent than the grantors had power to convey, and yet the grants were held good to the extent of their power. Apply the rule in *Shepard's Touchstone.* Here is a deed which conveys

Darling v. Rogers.

Thomas Darling's estate in trust to *sell;* it then adds a trust to *mortgage,* which is void. *Sheppard* says: "Let it receive as much effect as may be to that end for which it was made." Here let it have the effect to create a trust to *sell* for the benefit of creditors, though Darling had no power to say they might also *mortgage.* This rule is the same, whether the restraint be imposed by a statute or the common law. That was distinctly held in *Doe, ex dem. Thompson,* v. *Pitcher,* 2 *Marsh.* 61; 6 *Taunt.* 369. There, a deed of land was given, in respect to part of which, it was void by the statute of mortmain; and it was therefore insisted that it was void for the whole. Ch. J. *Gibbs* said it was admitted that if the case stood on the common law, the deed would be void as to so much only as fell within the objection. He then adds: "The truth is, there is no difference between a transaction illegal at common law, and by statute; and the objection being that this deed conveys property in a way that is prohibited, whether by the common law or by statute, the construction is the same. Taking it to go no further than as I now state, it follows that that which conveys illegally is void, and that which conveys legally is valid. A statute, when it prohibits a thing, may go farther, and say *that the deed by which it is done shall be void,* and then a court of law must decide it is void to all intents and purposes, because the legislature has said so." In the case at bar, the learned chancellor admits that there is no statute declaring the deed before us totally void, because a part of it may be inoperative. On the contrary, the statute expressly declares, in the spirit of the common law, that we shall carry deeds into effect according to the intent of the parties, so far as we can see the intent, and so far as it is consistent with the rules of law. This deed is consistent in all except the trust to mortgage. The chancellor so regarded it in respect to the *personal estate.* I think he should also have included the real estate and the trust to sell. He did not, in my opinion, go far enough; and, therefore, the decree should be reversed.

Darling v. Rogers.

By Senator VERPLANCK. The chancellor has here adjudged that no estate in the real property of Thomas Darling vested in his assignees, by virtue of the deed of assignment, and the subsequent conveyances made to them. The assignment was in trust, "*to sell or mortgage* this real estate as the assignees should deem most advisable and productive," for the benefit of creditors. The chancellor considers the express trust to *mortgage* the assigned property as a trust prohibited by the revised statutes, and that therefore no estate vests in the trustees by this assignment. Upon the fullest examination I have been able to give to the subject, I have come to a different conclusion, and hold that the assignment is good and should be sustained.

There are two separate and distinct grounds upon which I rest this opinion—either of which I deem sufficient to sustain the assignment, and I consider both of them as solid.

I. The trust to *sell*, for the benefit of creditors, is provided for by the first provision of section 55, of the article "Of Uses and Trusts." 1 *R. S.* 728. "Express trusts may be created for either of the following purposes: 1. To *sell* lands for the benefit of creditors." The trust to *mortgage*, I regard as equally good under the second head of this section. "2. To sell, mortgage or lease lands for the benefit of legatees, or for the purpose of *satisfying any charge* thereon." The word *charge*, in its legal acceptation, has a very broad meaning. It includes payments charged upon land by *devise*, as legacies; those *by deed*, as rents, annuities and mortgages; those by *operation of law* for public purposes, as taxes and assessments; those by *effect of law*, in private suit, as judgments. In the dictionaries and digests of the common law, by no means the best expounders of the reason of the law, but of necessity the best interpreters of its vocabulary, the word *charge* is used in this latitude. I cite *Jacob's Law Dict.* word "*Charge*," and refer to the authorities there enumerated. "Lands may be charged divers ways, as by grant of rent out of it, by statutes, by *judgments*, conditions," &c. See also *Tomlin's L. Dict.* to the same effect. I cite these legal lexicographers, in preference to what on other points would be higher au-

thority, bcause they shew the general and familiar legal use of the word *charge*, before and at the time of the enactment of our statute.   Our revised statutes apply it in the same way, especially as to judgments, thus affording the best interpretation of the legislative meaning of the word in the article now under consideration.   " All judgments hereafter rendered in any court of record,. shall bind and be a *charge* upon the lands, tenements, real estate and chattels real, of every person, against whom any such judgment shall be rendered."   2 *R. S.* 359.

It appears from the case, it being alleged by the assignees and not contradicted, that besides the judgment of the respondents, there were other and prior judgments to a large amount against Darling, all being by law *charges* upon his real estate. A schedule annexed to the assignment, and referred to in it, also mentions a *mortgage* of ten thousand dollars charged upon a part of the lands.   Now, the satisfying of such judgments seems to be a valid purpose for a trust.   So, too, might be the paying of a mortgage, covering a large saleable property, by means of a new one, or a part of the same real estate, or on better terms of time or interest.

The chancellor has said, " that in the case of trusts to sell or mortgage lands for the benefit of legatees, or to satisfy charges thereon, the legislature has been careful not to vest the legal estate in the trustee"—citing 1 *R. S.* 729, § 56.   I do not so read the statute.   There are various sorts of trusts that may be legally created under the second subdivision of § 55, above quoted.   Part of these are trusts arising under *devises*, " where the trust is created to sell or mortgage lands for the benefit of legatees ;" to those, the 56th section referred to by the chancellor. directly applies, by enacting that a devise of lands to be sold or mortgaged, (except in certain cases,) shall vest no estate in the trustees, but shall be good only as a power.   But the statute is much broader than this, in the clause enumerating the purposes for which a valid trust may be created.   It allows them to be created, as we have seen, " to sell or mortgage for the purpose of satisfying any charge on the lands " conveyed.   The limitation of the 56th section is confined to

*devises,* and is an exception to the more general rule pre-
scribed by the statute in § 60. " Every express trust, valid
as such in its creation, except as herein otherwise · provided,
shall vest the whole estate in the trustees, in law and in
equity, subject only to the execution of the trust." The
trust created *to sell* for the benefit of creditors generally,
being valid undoubtedly, and the express words of the first
subdivision of § 55, the trust *to mortgage* seems equally
valid for the benefit of *judgment creditors,* and the satis-
fying their *charges* upon the land, as well as that of the
mortgage mentioned in the schedule annexed to the assign-
ment.

The only doubt then, as to the validity of the assignment,
must arise from the general language of the alternative di-
rection to sell *or* mortgage, as the assignees might deem
most advisable. There could be no room for doubt, if the
trust had been to *sell* for the benefit of all creditors—or to
*mortgage,* if deemed more advisable for satisfying the
*charges* of *judgment creditors.* But, on the whole, we must
look to the intention and legal effect of the instrument. We
ought not to presume any illegal intent, where there is an ob-
vious meaning in perfect conformity with the law. The dis-
cretion to sell or mortgage should be taken with reference to
the limitations imposed by the statute, restricting the mort-
gage to objects and purposes allowed and permitted ; some
of which the pleadings and proofs show to have actually ex-
isted. There is direct and positive evidence that some such
purposes were in the view or intention of the party. That
is no evidence that there were other purposes, not valid by
law, to which the proceeds of a mortgage could be applied.
Such an illegal intent, then, is not to be presumed, or to be
inferred from the use of too general and inartificial language.
I am accordingly satisfied to rest the decision of the cause
upon this ground alone.

II. But I am equally clear as to the validity of the assign-
ment upon another ground, wholly independent of the first.
Supposing the trust to *mortgage* to be prohibited by the
statute, so that no estate vested under it, would the effect be
to make the instrument void as to the real estate, and de-

feat a trust to *sell*, confessedly valid if it stood alone? What is the operation of the statute upon such an assignment, either upon separate and distinct trusts, or where an alternative discretion is given as to each trust? Let us presume, then, that the trust to *mortgage* lands was bad, as not falling within the purposes specifically enumerated, and that no estate vested by it in the trustees. Now the statute, § 58, declares, that where express trusts shall be created for any purpose not enumerated, no estate shall vest in the trustee. This provision the chancellor appears to consider as absolutely prohibitory, so that whenever a void trust is attempted to be created, no legal estate can be vested, at the same time, for other and valid trusts. I think not so; for that would be to make the statute contradict itself. The language of the statute here is merely negative, in its fair interpretation : " No estate shall vest in such trustee;" that is to say, no estate shall vest on such an unauthorized trust. But the succeeding section, § 60, is positive in its language : " Every express trust, valid as such in its creation, shall vest the whole estate in the trustees in law and in equity, subject only to its execution." By the *invalid* trust, no estate is vested. The *valid* trust " vests the whole estate in the trustees." This interpretation strikes me as sound and natural. It is consistent with the rest of the statute, reconciling the whole, and it meets the daily exigencies of business and the necessity of giving a beneficial effect to instruments often hastily drawn, and frequently without the strictest technical precision in relation to the operation of a branch of law doubtful, and which under any form of jurisprudence must be difficult and intricate.

There can never be any difficulty in applying this construction of the statute, where the two trusts are wholly separate though in the same instrument : as where part of the land is conveyed to one purpose, that being a valid one, and part to another and an invalid one, or where the whole is assigned first for a valid trust, and that failing, to some void purpose. But when the purposes are in the *alternative*, or when they are mixed and complicated together, the separation of the good and the bad may not be obvious, and

sometimes not possible.  When the void part is so compli-
cated with a trust otherwise valid, as to form an essential
part of the intent and object of the person creating it, it may
vitiate the whole, because the trust may be in fact single,
though composed of several parts, one of which is void.
Thus in a trust to " receive and pay over rents," the object
is mainly the paying over to the beneficiary, and if that is
prohibited by law, the whole subsidiary trust fails.   But as to
other separate or alternative dispositions, the doctrine estab-
lished as to devises affords a safe and accurate rule.   This
is in substance that when a will is good in part and bad in
part, the part otherwise valid is void, if it works such a dis-
tribution of the estate, as from the whole testament taken
together was evidently never the design of the testator.
Otherwise, when the good part is so far independent that it
would have stood, had the testator been aware of the inva-
lidity of the rest.   This doctrine was applied in the great
case of *Coster* v. *Lorillard*, in this court, as to certain reli-
gious or charitable devises or legacies, 14 *Wendell*, 265.
So Chancellor Walworth, in the well known case of *Hawley
& King* v. *James*, states the general rule to be, that the in-
validity of any particular trust, interest, accumulation or
limitation, created by will, does not destroy the trusts and
limitations which are in themselves valid, unless the latter
are so mixed up with the illegal and void, that it is impossi-
ble to sustain the one without giving effect to the other. 5
*Paige*, 318.   Nor is this confined to *devises*; the prevailing·
doctrine of equity (and in many cases of our common and
statute law also) is that when good and bad provisions are·
mixed in a deed, the good shall be saved so far as consistent
with probable intent.   By our statutes no appointment is
void for excess, except as to the excess itself, and the same
is the doctrine of the courts in England.   The execution of
a power may be good in part and bad in part, and the ex-
cess only will be void.   The residue will be good when
there is a complete execution of the power, and only a dis-
tinct and independent limitation unauthorizedly added, and
the boundaries between the sound part and the excess are
clearly distinguishable : as in the case of a power to lease

for *twenty-one years*, and the lease be made for *twenty-six years.* *See Adams* v. *Adams, Cowp.* 657, *and other authorities cited in* 4 *Kent's Comm.* 346, *note e.*

In the present case, there was a trust created to *sell* land, or part of it, if the assignees should deem it most advisable; also to *mortgage* the same or any part, if they deem that most advisable. If the latter power was illegal or doubtful, this very legal impediment would shew that they could not deem it advisable. But at any rate, the whole discretion and authority to sell was given, and it cannot be imagined that if the assignor had been advised of a legal doubt as to the second authority, to mortgage, and had been induced to strike out that clause, it would have made the slightest change in his intention. One authority is in no manner complicated with the other, in such wise that the valid cannot be sustained without giving effect to the other. The better trust here, then, must not be disturbed, though the other be bad, which, for reasons above stated, I think it is not.

If there is any reason to apprehend, as was argued by counsel, that this assignment would place property by mortgage beyond the reach of creditors, by creating a trust estate in the hands of assignees out of their reach, and operating to delay and hinder the collection of their just debts; such abuse might be reached and prevented by an injunction without restraining the beneficial operation of the trust to *sell.* If we should then grant the second alternative trust to be void, yet I hold that a legal estate has been vested under the statute by the valid part.

The only remaining question would then be, whether the remaining trust, although void as such, be not still valid and rightly executed as a *power in trust,* whilst the legal estate is in the same persons for another object? The impression made upon my mind on the argument, was in favor of that conclusion. But I decline giving any deliberate and decided opinion on the subject, for several reasons: The chancellor has declined any decision on that head; its decision may not be necessary for the due execution of the trust; the point itself, though argued before us, was not the

prominent one in the cause ; nor, according to my under-standing of the law, at all necessary for its decision. Under such circumstaces, I prefer to avoid that point, for I should be sorry to see it settled without the greatest deliberation, and on the most solemn argument, as it involves the right construction of our revised statute of *powers*, which the learning and talent exhibited by the revisers in amending and explaining the former adjudicated doctrines, and in introducing new rules for the creation, interpretation and execution of powers, have not freed from the obscurities and intricacies inherent in the subject itself.

I have only to add, that regarding the questions involv-ed in this cause as of serious interest to our commercial community, I have endeavored to examine them on general principles of the construction of our statute, with as little dependence upon the peculiar character of the cause as might be. But it gives me greater confidence in my own general legal conclusions, when I find that they go to confirm an assignment unquestionably honest in its design, and made for just and beneficial purposes.

If either of my conclusions above stated are correct, the chancellor's decree must fall, entirely, as the other directions and provisions, though certainly the most prudent and equi-table that could be made on his construction of the law, de-pend entirely upon that construction. I think that the estate vests in the assignees. If so, the chancellor's decree should be reversed entirely, unless in the opinion of this court it be considered that the assignees should be restrained from mort-gaging the property, either altogether or for specific purposes of paying off judgments or mortgages. I am for reversal *in toto.*

On the question being put, *shall this decree be reversed?* All the members of the court present who had heard the argument of the case, answered in the *affirmative.* Whereupon the decretal order of the chancellor was *re-versed,* and a *resolution* adopted, which was incorporated in the decree, in these words: " It is further ordered, adjudged and decreed, that an assignment of real estate in trust, to

sell or mortgage for the benefit of *creditors at large*, is valid for the purpose of selling, though void for the purpose of mortgaging; also, that if any of the creditors have judgments, mortgages or other charges on such estate, the trust to mortgage is valid so far as it seeks to pay or secure the same, or to mortgage a part of such assigned estate, to pay such an incumbrance on such part, though it be void for the purpose of paying or securing creditors at large."