THE TRUSTEES OF THE N. C. ENDOWMENT FUND *v.* L. L. SATCHWELL.

The private Act of 12th December, 1863, incorporating the "Trustees of the N. C. Endowment Fund," being calculated and having the effect to aid the rebellion then existing, is void and confers no powers on the persons attempted to be incorporated.

RODMAN and READE, J. J. dissenting.

CIVIL ACTION for the recovery of real estate, tried on demurrer before *Clarke J.*, at the Fall Term, 1873, of WILSON Superior Court.

It was alleged in the complaint that the plaintiff was a corporation duly organized under an act of our General Assembly, ratified 12th December, 1863 ; that it was entitled to the possession of certain real estate in the town of Wilson, N. C., and that the defendant withholds possession thereof.

To this complaint defendant demurred, alleging as grounds of demurrer that the said act of incorporation is illegal and

void, in that it was passed in aid of the rebellion against the government of the United States, and that said act being so illegal and void, the plaintiff was not a capable grantee to hold any real or personal property under the laws of the State.

After argument His Honor overruled the demurrer, and the defendant appealed.

*Fowle* and *Murray*, for appellant.
*Smith & Strong*, contra.

PEARSON, C. J.   The case was argued upon a demurrer to the complaint on the ground that the plaintiff has no legal existence, and, of course, no capacity to sue or to hold property, its alleged character being void because "it was passed by a General Assembly of the then insurgent State of North Carolina in aid of the late rebellion," &c.

Under sec. 123, C. C. P., the Court is required to take judicial notice of a private statute, which is referred to by its title and pay of ratification.   So we are to take the complaint as setting out the statute by which the plaintiff is incorporated.

The question is, whether the demurrer can be restrained on the ground that by the complaint (supposing it to set out the statute) was void, appears on its face, for the reason that it was calculated and intended and had the effect to aid the rebellion.

Let the statute speak for itself:

"SECTION 1. *Be it enacted by the General Assembly of the State of North Carolina, and it is hereby enacted the by authority of the same,* That Charles F. Deems, Geo. W. Mordecai, S. S. Satchwell, John Y. Foard, David Murphy, J. Q. A. Leatch, D. M. Barringer, Edward J. Hale, S. D. Wallace, R. M. McCracken, Walter F. Leake, E. G. Reade, G. W. Collier, Chas. W. Skinner, Kemp P. Battle, Robert W. Best, John C. Washington, James J. Taylor, John H. Hyman, Wm. J. Hawkins, J. B. Littlejohn, Daniel G. Fowle, John H. Haughton, J. S. Royster, John G. Williams, Peter F. Pescud, A. M. Gorman, Thomas Bragg and others who have contributed fifty

TRUSTEES of the N. C. ENDOWMENT FUND *v.* SATCHWELL.

dollars or more to the fund of which Charles F. Deems is and has been financial agent, or who may hereafter contribute a like sum to be invested and the interest thereon expended for the education of the indigent orphan sons of such soldiers as have fallen or may hereafter fall or be disabled in the wars of the Confederate States of America, and when no such claimants shall exist, then of other orphan boys, to be selected as far as practicable from the counties in proportion to the amount contributed from counties, their assigns and successors in office as herein described, be and they are hereby created, constituted and declared a body politic and corporate in law and in fact by the name and style of ' The Trustees of the North Carolina Endowment Fund,' and by that name shall be capable of taking by purchase, devise, or donation, real and personal estates, and of holding and conveying the same, shall have perpetual succession and a common seal, may sue and be sued, plead and be impleaded in any Court of law and equity, and shall have such other powers and enjoy such other rights as are usually incident to corporate bodies, and are not inconsistent with the laws and Constitution of the State.

"Sec. 2. *Be it further enacted, by the authority aforesaid,* That all property, moneys, or effects of whatsoever nature or description heretofore given or conveyed, or devised, and hereafter to be given, conveyed or devised to the said trustees of the North Carolina Endowment Fund, shall be held and possessed in special confidence and trust by the said corporation for the sole use and benefit of the said orphans in such manner as may hereafter be devised and adopted by said trustees.

"Sec. 3, *Be it further enacted by the authority of the aforesaid,* That the said trustees may make and establish such rules, regulations and by-laws as may be necessary for the management of its funds, as they may deem necessary to accomplish the objects of the same, not inconsistent with the laws and Constitution of the State.

"Sec. 4, *Be it further enacted by the authority aforesaid,* That the said trustees may declare what number may con-

stitute a quorum for the transaction of business, and may appoint a board of directors and such other officers as they may deem expedient to manage said fund.

"Sec. 5. *Be it further enacted by the authority aforesaid*, That this act shall be in force from and after its ratification."

("Ratified the 12th day of December, 1863,") in the midst of the war.

Had these charitably disposed gentlemen, after the war was over, applied to the rightful General Assembly of the State for an act of incorporation, to effect the purposes set out in the statute under consideration, their application would have met public sympathy, and no legal objections could have been interposed. It is manifest on the face of the statute that it was the object of the persons who applied for the charter, and of the General Assembly which granted it, thereby to aid the rebellion.

His Honor erred in overruling the demurrer. This will be certified to the end that the action may be dismissed.

PER CURIAM.                    Judgment reversed.

RODMAN, J. *Dissenting.* It is contended that the act of 12th December, 1863, incorporating the plaintiff, is void, by reason of its manifest tendency to aid and encourage the rebellion then existing. All the questions which can be made in this case, arise upon the complaint and the demurrer. There is no plea averring *as a fact*, an illegal intent in the Legislature in enacting the act, or in the parties incorporated. No evidence outside of the act, therefore, can be resorted to to establish such intent. If it does not appear *as a legal inference* on the face of the act, it cannot be found as a fact in the present stage of the case, and when raised by a plea, the question will be for the decision of a jury. *The intent of the act can be gathered only from the trusts imposed on the corporation.*

The trusts are, to apply donations received or to be received

to be expended for "the education of the indigent orphan sons of such soldiers as *have fallen* or *may hereafter fall or be disabled* in the wars of the Confederate States of America, and when no such claimants shall exist, for the education of *other orphan boys,* to be selected, as far as practicable, from the counties in proportion to their contributions." Here are three classes of beneficiaries clearly described and distinguished. No distinction is made as to race or color. As the act is intended for the benefit of orphans only, by the words, "fall or be disabled," must be meant either immediately killed, or so disabled that death results from the disability.

The questions to be considered may be divided thus:

I. Are any or all of the trusts illegal?

II. If one of them is illegal and the others not, will the act be held void *in toto,* or valid for the purpose of supporting those which are not illegal but meritorious?

Since the close of the late civil war, the Courts of the Southern States have had occasion to make a new and somewhat copious chapter in the law of contracts illegal by reason of being in aid of the rebellion. Strange as it may seem when contrasted with our own experience, the civil wars of England and the unsuccessful insurrections and rebellions in our own country, such as Shay's in Massachusetts, the whiskey insurrection in Pennsylvania, and the Dorr war in Rhode Island, have not left a single case which I have found cited on this branch of the law.

To decide the cases brought before us, we resorted to the precedents in cases not influenced by any such embittered feeling as every civil war naturally leaves behind it. And I think we have acted wisely in taking the principles of such cases, although the result of our decisions (as it was of those) has been to exempt defendants equally guilty with the plaintiffs, from the payment of debts to which in the forum of morals and conscience, they were unquestionably bound, and sometimes to vest persons with property for which they had given no value, and where they had no moral claim.

Since it pleased divine Providence to visit the " Lost Cause " with defeat, we must regard the unsuccessful effort at independence as a turpitude, and every excutory contract, entered into actually or by construction of law, with an intent to promote it as *malum inse e*, and void. But it is not necessary to go farther.

I now proceed to consider the questions I have stated in their order :

I. In my opinion a fair examination of the act will show that no one of the trusts declared is unlawful, because no one of them tended, except in that merely possible and remotely consequential way which the law disregards to encourage the rebellion.

It is not contended that the trusts for the benefit of the orphans of soldiers *already* deceased was illegal. The alleged illegality is found in the trusts for the orphans of those *who shall thereafter* fall or be disabled; it is to be noted, not of those who shall *thereafter enter the service* and fall, &c. It is argued that this tended to encourage men to enter, or adhere to the Confederate service. If encouragement is given to any act, it is to being killed or disabled, which is the condition precedent to the bounty. But to encourage that can hardly be considered disloyal, since it is just what *our* armies, as we must now call them, were striving to bring about. But apart from that, I agree that every contract and every act of the Legislature, which can be fairly construed as intending to aid and encourage the rebellion then existing, is void. But before that intent can be imputed to it, it must appear that it *naturally and probably* tended to produce that effect. The inducement which it holds out to join in or adhere to the rebellion, must be such as is *usually* influential upon human conduct, and which is therefore regarded as influential by the law. For if the promised benefit be so trivial, remote or contingent that it would not naturally or probably, and does not usually induce to crime, although by possibility, in some rare and exceptional case it may, such a benefit is not considered by the law as being intended to have a criminal effect. It is regarded as no

TRUSTEES of the N. C. ENDOWMENT FUND *v.* SATCHWELL.

inducement at all. *De minimis non curat lex.* I know of no direct authority in point to this case, but I think this proposition may be maintained on the analogy of cases in which the law is clear and undisputed.

A man may insure his life for the benefit of his estate or of his family. A husband may insure the life of his wife, or a father that of his child, for his own benefit, and a wife that of her husband for her own. It was held lawful for a master to insure the life of his slave. *Spruill* v. *N. C. Mutual Life Insurance Co.*, 1 Jones, 126; *Woodfin* v. *Asheville Insurance Co.*, 6 Jones, 558.

In all these cases there is a clear and direct temptation to destroy the insured life, and it is by no means impossible to conceive of circumstances in which it may be done with but little risk of detection and punishment. Cases are not rare in which the temptation has actually proved strong enough to induce the crime. But such is not the usual and therefore not the natural and probable effect, and the law does not consider such policies of insurance void, because of this their feeble and remote inducement to crime. On the contrary, they are lawful and common.

In all such cases the benefit is direct to the individual whom it might be argued was thereby tempted to crime, and is to be enjoyed during his life. But in the present case the supposed temptation is much slighter and more remote; it is a benefit to his children, to be received by them after and through his voluntary death, and is moreover not a benefit of a thing *in esse*, but of an education in a school to be established, if the liberality of donors shall supply the funds. Benefits to be received after one's death are proverbially feeble motives; experience shows us that the future happiness which as Christians we believe will follow a Christian life in this world, has but little influence on the conduct of most men. Many murders have been committed to obtain money insured on the life of the deceased wife, child or slave. But I am incredulous that any soldier ever got himself killed or disabled, or ever entered the Confederate or

any other service, in time of war, in order that his children might, after his death, receive a free education in a school which had only a possible existence, rather than in the established public schools.

There is a like analogy in the rule of damages in civil actions against *tort feasors ;* only such are allowed as are the natural and probable result of his wrongful act. *Dale* v. *Grant,* 34 N. J. Law, (5 Vroom,) 142.

In criminal prosecutions, when the criminality of an act depends on the intent to injure another, such intent is only inferred when the injury is the natural and probable result of the act. 2 Stark Ev. 573. For example, if a mason in building a house on a frequented street, drops a brick, whereby a passer-by is killed, he will be held guilty of a crime, because in such a place the injury was the natural and probable result of his act ; but otherwise, in an unfrequented place where he had no reason to expect any one to be. To hold the trust in question illegal is, it seems to me, to violate all these analogies and to give to the doctrine of constructive crime, where no criminal intent in fact existed, an unprecedented and unreasonable extension.

If we consider the act in the light of the history of the times, the real intent is clear. It was not to induce volunteers to enter the army ; volunteering had long ceased and been followed by a rigorous conscription which allowed of no volunteers. The act was intended for the children of these conscripts. At all events, the charity was for the innocent children and not for the parents, whether guilty or innocent, volunteers or conscripts. To defeat it upon the ground contended for would confine charity within the narrowest limits of political orthodoxy and shut out from it all whose faith was not ours. It is usually esteemed not the less a virtue when it extends to all the children of poverty and misfortune, without restriction from the creeds, the errors, or even the crimes of their parents. Thou shalt not visit the sins of the fathers upon the children,

TRUSTEES of the N. C. ENDOWMENT FUND v. SATCHWELL.

has been accepted as the law of humanity ever since the time of Moses.

But however this may be, and assuming that the particular trust for the orphans of soldiers who should *afterwards* be killed is illegal and will not be sustained, it seems to me that the other trusts which are clearly separable from this and are admittedly free from any objection of turpitude, ought to be sustained and for that purpose the act of incorporation held valid.

In Metcalf on Contracts, p. 246, the law is clearly, and as I conceive, correctly stated. The following are quotations from that work, omitting for the sake of brevity all that can be omitted without injury to the meaning. I avail myself of the authorities collected by the learned author. If the *consideration* of a promise be unlawful the promise is void. " When, however, the illegality of a contract is in *the act to be done,* and not in *the consideration,* the law is different. If for a legal consideration a party undertakes to do two or more acts and part of them are unlawful, the contract is good for so much as is lawful, and void for the residue. Wherever the unlawful part of a contract can be separated from the rest it will be rejected and the remainder established." " Therefore," says HUTTON, J., (*Bishop of Chester* v. *Freeland,* Leg. 79,) " at the common law, when a good thing and a void thing are put together in the self same grant, the same law shall make such a construction that the grant shall be good for that which is good and void for that which is void." " So if any part of the condition of a bond be against law it is void for that part and good for the rest; or if a bond be given for the performance of covenants contained in a separate instrument, some of which are lawful and others unlawful." *Chamberlain* v. *Goldsmith,* 2 Brownlow, 282; *Norton* v. *Lynns,* Moore, 856.

" If then any part of a contract is valid, it will avail *pro tanto,* although another part of it may be prohibited by statute," &c. See *Moony* v. *Leak,* 8 T. R. 411; *Renison* v. *Cole,* 8 East. 231; *Doe* v. *Pitcher,* 6 Taunt. 369.

" It appears from these cases that when the invalid part of an agreement can be separated from the valid, the latter shall stand, although the former be declared void by statute." To the same effect are the class of cases of which *Mallan* v. *May*, 11 M. & W. 653, and *Price* v. *Green*, 13 Mess. & Wils. 695, are the leading ones. They decide that in contracts in restraint of trade the reasonable provisions will, if possible, be separated and supported, while the unreasonable, and therefore illegal ones, will be disregarded.

In this State the same principles have been clearly stated and applied to declarations in trust. The leading case is *Brannock* v. *Brannock*, 10 Ired. 428. There one Thompson had made a deed of land in trust to secure several debts, one of which was usurious, and it was contended that the *whole* deed was therefore void. The Court (PEARSON, J., delivering the opinion,) say : " The operation of the deed was to pass the legal estate, with *a separate declaration of trust* for each of the debts therein enumerated. There can be no reason why the declaration of trust in reference to one debt may not stand and the declaration of trust in reference to another be held void." This case has been recently approved and followed in *McNeill* v. *Riddle*, 66 N. C. Rep. 290. See also *Darling* v. *Rogers*, 22 Wend. 483 ; *Van Veckton* v. *Van Veckton*, 8 Paige 104, *Savage* v. *Burnham*, 17 N. Y. 561.

I am unable to see how the present case can be distinguished from these, and I think the demurrer should be overruled.

Justice READE concurs in this dissenting opinion.