## NOYES vs GUY.

### Opinion delivered January 12, 1899.

*1. Record—Inventory of Assignee—Presumption.*

When the record does not contain the inventory filed by an assignee, it will be presumed on appeal that the inventory was a proper one.

*2. Bond—Filing by Clerk an Approval.*

The filing by the clerk of the court of the bond of an assignee for the benefit of his creditors, is an approval of the bond by him and it is not necessary that it be specially marked approved.

*3. Verdict—Appeal.*

The question of whether the assignee took possession before filing inventory and bond having been submitted to a jury under proper instructions, it will not be considered on appeal.

*4. Assignment—Conflicting Provisions—Lawful One Will Prevail.*

Where direction is given in a deed of assignment to comply with with the law, a proviso added in conflict therewith will be regarded as inoperative and will not invalidate the deed.

*5. As. 'gnment—Directions to sell all assets in 120 days does not avoid.*

A deed of assignment provided that the assignee should "carry out this trust by conforming to the laws of the United States in said territory provided as follows: My said assignee, after executing a good and sufficient bond and filing an inventory, shall, within 120 days sell all of the property herein conveyed, at public auction and pay the proceeds to my creditors, as herein provided." *Held,* This proviso did not render the deed invalid.

Appeal from the United States Court for the Central District.

YANCEY LEWIS, Judge.

Action in attachment by Noyes, Norman & Co. against N. B. Guy.  J. F. Neel filed an interplea claiming the property as assignee.  Judgment for interpleader.  Plaintiff appeals.  Affirmed.

On December 12, 1895, plaintiffs filed their complaint against N. B. Guy, defendant, and sued out an attachment, which was levied upon a general stock of merchandise; as the property of said N. B. Guy.  On April 15, 1896, plaintiffs amended their complaint; and April 17, 1896, defendant, N. B. Guy, filed a controverting affidavit of the grounds of attachment; and June 29, 1896, J. F. Neel, the appellee, by leave of court, files his interplea. and alleges that he is owner and entitled to the immediate possession of the property attached, "under and by virtue of a certain deed of assignment made and executed to this interpleader by N. B. Guy, the above named defendant, on the 10th day of December, 1895," and delivered to him the same day; that on the 11th day of May, 1896, he filed inventory and bond with the clerk of the United States court , as required by law; and prays judgment for the property attached or its proceeds.  On the same day plaintiffs filed their answer to the interplea, and admit that they attached the property; deny Neel is entitled to the property or its proceeds; deny that Neel filed inventory and bond, on May 11, 1896, as required by law; and say "that the pretended deed of assignment mentioned in said interplea was fraudulently executed by the said Guy for the purpose of cheating, hindering, and delaying his said creditors, and in furtherance of said purpose there was incorporated in said pretended deed of assignment a clause empowering the assignee therein, interpleader herein, to sell, within 120 days, all the property pretended to be conveyed by such instrument, including therein all outstanding ac-

counts, notes, and choses in action of said Guy, of which there were a large number and of great value, and the authority so pretended to be conferred in such pretended deed of assignment was and is contrary to law, and rendered said pretended deed of assignment void and fraudulent; that said Guy, immediately upon the execution of said instrument mentioned in said interplea, delivered the actual and exclusive possession of the stock of merchandise and some other portions of the property pretended to be conveyed by said instrument to the said Neel, as assignee, before any inventory thereof had been filed, or any bond given, by said Neel as assignee, as required by law; that the said Guy frauduently concealed, withheld, and still withholds, a large portion of the assetts of his estate from said Neel as assignee, with the knowledge of said Neel, assignee, at the time of the execution and delivery of said pretended deed of assignment, namely, the sum of $3,500 in money and a large improvement upon the public domain of the Choctaw Nation of great value, namely, of at least $500 value, and other valuable assets of his said estate, with the knowledge of said Neel, as assignee." Wherefore they say that the deed of assignment is fraudulent and void, and ask for judgment. The case was tried before Judge Yancey Lewis and a jury, and a verdict was returned for the interpleader. Motion for a new trial was made, and overruled by the court, and the plaintiffs appealed to this court.

*Harrison O. Shepard, James P. Grove* and *C. L. Jackson,* for appellants.

*R. Sarlls* and *Stewart, Gordon & Hailey,* for appellee.

TOWNSEND, J; The appellants have filed 12 specifications of error. The first and fifth errors assigned were the introduction of the deed of assignment in evidence over

the objection of the plaintiffs, and the refusal of the court, at request of plaintiffs, to instruct the jury that the deed introduced was void on its face and fraudulent as to creditors. The second and sixth errors assigned were the introduction in evidence of the inventory, over the objection of plaintiffs, and the refusal of the court, at request of the plaintiffs, to instruct the jury that the inventory introduced in evidence is not such an inventory as is required by law. The third and seventh errors assigned were the overruling of the appellant's objection to assignee's bond, and the refusal of the court, at request of plaintiffs, to instruct the jury that no proper bond has been proven to have been given by the assignee. The fourth error assigned was the refusal of the court to instruct the jury, at request of plaintiffs, to return a verdict for appellants. The eighth and ninth errors assigned were the refusal of th| court, at requests of plaintiffs, to instruct the jury that th| bond introduced in evidence had not been approved as req ired by law, and the refusal of the court, at request of plaintiffs, to instruct the jury that, if they believe that the bond of the assignee was not approved by the clerk of the court, then the assignee was not entitled to possession of the property or its proceeds, and their verdict should be for the plaintiffs. The tenth error assigned was the refusal of the court, at the request of plantiffs, to instruct the jury that before the assignee can take possession of the property he must file an inventory and execute a bond. The eleventh error assigned was the refusal of the court, at request of plaintiffs, to instruct the jury as follows: "The jury are instructed that the law regulating the assignment of property for the benefit of creditors in force in the Indian Territory requires notes and accounts assigned to be held for collection, and not to be sold at public auction within one hundred and twenty days from the filing of assignee's bond, as other property is required to be; and the jury are further instructed that the deed of

assignment in this action, in providing and requiring that all the property assigned, including the notes, accounts and mortgages, should be sold at public auction within 120 days aftert he execution of the bond the assignee is required by law to execute. was in violation of the law of assignments, and made the deed fraudulent in law, and they will find for plaintiffs, and against the interpleader." The twelfth error assigned was the overruling of plaintiff's motion for a new trial by the court, and his giving the following instruction to the jury: "The second issue submitted to you involves the question whether or not the assignee, Neel, had possession of the assigned property before the execution and filing of his bond and inventory, as required by law, and whether such possession, if any, was by virtue of an agreement, express or implied, had between the assignor and assignee, prior to or contemporaneously with the execution and delivery of the deed of assignment. The law inhibits any possession of the assignee, before filing his bond and inventory, of a character and under circumstances which afford the assignee opportunity to make way with the assigned property. It permits the assignee access to the assigned property for the purpose of making an inventory and bond. If you find from the evidence that the assignee, Neel, before filing his inventory and bond as required by law, did not have, of the assigned property, possession as above defined, then you will find this issue in favor of the interpleader. But if you find from the evidence that the assignee, Neel, before filing his inventory and bond, did have of the assigned property possession as above defined, then you will proceed to consider whether or not such possession was by virtue of an agreement or understanding between the assignor, Guy, and the assignee, Neel, had prior to, or contemporaneously with, the delivery of the deed. Such agreement may be established by direct evidence, or implied by you from circumstantial evidence, if

(14)

the same clearly satisfies you of the existence of the agreement. If you find from the evidence possession of the character above stated, of the assigned property by the assignee before filing his inventory and bond, in pursuance of an agreement or understanding between the assignor and assignee, as above explained, made prior to, or contemporaneously with the delivery of the deed of assignment, then you should find this issue for the plaintiffs. If the evidence fails to establish either such posssession by the assignee, or such agreement, then you should find this issue for the interpleader. No misconduct on the part of the assignor or assignee, after the execution of the deed of assignment, will affect the validity of the deed, unless this misconduct was in pursuance of an agreement between them made prior to, or at the time of, the execution of the deed." It is also alleged as error that the court allowed attorneys a fee of $750 after the filing and approval of the supersedeas bond.

This last proposition as to attorneys' fee is the first question discussed by appellants in their brief, but no authority is cited. Section 308, Mansf. Dig. is as follows: "Sec. 308. In case any portion of the property becomes involved in litigation in the courts, the assignee may set forth the facts in such litigation in a petition to the court, and the court may allow the assignee to employ an attorney to either prosecute or defend such suits, stipulating the amount or per centum of such attorney,s fee in each particular case, taking into consideration the amount in controversy, for which fee or per centum the assignee shall be entitled to credit." This section contemplates evidently an allowance of fees to attorneys. The only question can be as to whether the order was made at the proper time. At any rate, it does not go to the validity or invalidity of the assignment in this case. The order was made after the motion for a new trial was overruled and supersedeas bond

filed, and we do not think it is properly before this court at the present time.

The nine specifications of error first assigned refer to the admission of the deed of assignment, and the objections thereto, because no proper inventory had been filed by the assignee and no bond properly approved had been filed. Section 305, Mansf. Dig., is as follows: "Sec. 305. In all cases in which any person shall make an assignment of any property, whether real personal, mixed, or choses in action, for the payment of debts before the assignee thereof shall be entitled to take possession, sell or in any way manage or control any property so assigned, he shall be required to file in the office of the clerk of the court exercising equity jurisdiction a full and complete inventory and description of such property, and also make and execute a bond to the state of Arkansas in double the estimated value of the property in said assignment, with good and sufficient security, to be approved by the clerk of said court, conditioned that such assignee shall execute the trust confided to him, sell the property to the best advantage and pay the proceeds thereof to the creditors mentioned in said assignment according to the terms thereof, and faithfully perform the duties according to law." This is the law in this jurisdiction regulating the making and filing the inventory and the bond by the assignee. It will be observed that no particular form of inventory is prescribed, the language of the law being, "a full and complete inventory and description of such property and also make and execute a bond  * * *  to be approved by the clerk of said court, conditioned," etc. The inventory has not been brought up by the bill of exceptions, and hence is not before this court. The assignee was examined in regard to it, and testified as follows:  "Q. I believe you are the assignee in this case?   A.   Yes, sir. Q.   Did you file this book here (handing witness book referred to as inventory)?   A.   Yes, sir.   Q.   Well, sir; I will

ask you whether or not that is a full and complete inventory of all the property that was assigned to you by N. B. Guy. A. Yes, sir. Q. You intended to make it a complete inventory, did you? A. Yes, sir.'' The record shows that the inventory had attached to it the following: ''The above is a full and complete inventory and description of all the property assigned to me by N. B. Guy. [Signed] J. F. Neel.'' In the condition of the record, the action of the court below in admitting the inventory is presumed to be correct.

It appears from the testimony of the assignee that his bond and inventory were filed at the same time. It appears from the testimony of the deputy clerk that the inventory and bond were presented to him, and he marked the inventory ''Filed,'' but that when he examined the bond, and found the sureties had not qualified, he scratched the filing mark off the inventory, and held it until the 11th day of May, 1896, when he again marked the inventory ''Filed,'' and on the same day the bond was filed. The record shows the following indorsement on the bond: ''May 9th, 1896, approved. Yancey Lewis Judge. Filed May 11, 1896. P. B. Stoner, Clerk.'' Under the statute, it is made the duty of the clerk to approve the bond, and not the judge. In the examination of the deputy clerk appears the following: ''Mr. Stewart: When you got this bond approved by the judge, you considered it good? A. Yes, sir. Q. And therefore filed it? A. Yes, sir. Mr. Jackson: You did state that you didn't consider that you approved it? A. No; I don't know that I did. I don't remember exactly. I considered that it was a good bond, however. Q. Because the judge had approved it? A. Yes, sir.'' The court below, at request of plaintiff's counsel, made the following statement: ''The bond was left with me by Mr. Sarlls for a period of perhaps four weeks, for the purpose of determining whether or not the sureties were sufficient, and I held it during that period,

until I was able to make inquiry as to the sufficiency of the sureties.    Whereupon I approved it in the way that appears upon the bond, and turned it over to Mr. Sarlls." The court below held as follows:    "On the question of the approval of the bond, I think when the clerk filed it he approved it in that way; that must be held to be an approval.    He may have approved it because he regarded my approval as suffici-ent, but whenever it is the duty of an officer to approve a bond, and he accepts it, and files it, I hold that it must be considered that he approved it."    In Cunningham vs Holt (Tex. Civ. App.) 33 S. W. 981, cited by appellants, it is held "that, wean the bond is approved and filed with the county clerk, the action of the judge approving it cannot be called in question in any way in a suit by the assignee against one who wrongfully takes the property assigned."    "The most accurate definition of 'filing' a paper' is that it is its deliverk to the proper officer, to be kept on file."    Notes to Beebe vs Morrell (Mich.) 15 Am. St. Rep. 294 (s. c. 42 N. W. 1119). We think the filing of the bond by the clerk was an approv-al of it by him, and that it was not necessary that he should specially mark it "Approved."    This disposes of the first nine specifications of error.

It is unquestionably the law that the provisions of a statute regulating an assignment for the benefit of creditors are mandatory, and must be complied with or the assign-ment is void. Had the deed provided that possession should be taken before making and filing inventory and bond, it would have been void; but the deed in the case at bar makes no such provision.    But as plaintiffs contended that, as a matter of fact, the assignee did so, that question was sub-mitted to the jury (see charge of the court, supra), and the issue was found for the interpleader, the assignee.    This disposes of the tenth and twelfth assignments of error.

The only remaining question is the error assigned in

the eleventh specification, supra, and, if the instruction asked by plaintiffs is the proper construction of the deed in this case, the same was fraudulent in law and void. The provision of the deed, which it is insisted by appellants' counsel is fatal to its validity, is as follows: "And hereby empowers his said assignee to carry out this trust by conforming to the laws of the United States in said territory, provided as follows: My said assignee, after executing a good and sufficient bond and filing an inventory, shall, within one hundred and twenty days, sell all of the property herein conveyed at public auction, and pay the proceeds to my creditors, as herein provided." The language of the provision, "And hereby empowers his said assignee to carry out this trust by conforming to the laws of the United States in said Territory," was proper. Had the language stopped there, no question could have been raised as to the validity of the deed; but it insisted that the proviso following that language is a limitation upon the law, and, if that contention is correct, the deed is unquestionably invalid. The authority relied upon by appellants is the case of Churchill vs Hill, 59 Ark. 64, 26 S. W. 378. It is there held that section 309 of Mansfield's Digest, which is as follows: "Sec. 309. Said assignee shall be required to sell all the property assigned to him for the payment of debts, at public auction, within 120 days after the execution of the bond required by this act, and shall give at least thirty days' notice of the time and place of such sale; and any person damaged by the neglect, waste or improper conduct of such assignee shall be entitled to bring his action on the bond, in the name of the state, for the use and benefit of such person,"—was repealed or amended by section 307 of Mansfield's Digest, which is as follows: "Sec. 307. Such account shall be carefully examined by the court, and upon such examination the court shall allow the assignee for all debts with which he stands charged which the court shall be satisfied could

not be collected, and shall allow the assignee any sum not exceeding ten per centum on all sums less than one thousand dollars, and on all sums over one thousand dollars five per centum for his risk and trouble in attending to the settlement of such assignment." And the court say: "This last section was enacted subsequently to section 309, and repealed or amended the latter section to the extent they are in conflict, although the latter was not mentioned in the act of which the former was a part,"—citing numerous cases to sustain such a construction. The court further say: "Construing section 307 and 309 together, it is manifest that an assignee is not required to sell choses in action within the 120 days." Now, the question presented is, was the deed in Churchill vs Hill the same as in the case at bar? The provision in the Churchill deed is as follows: "That the said William C. Ashley shall be required to sell all the property assigned to him for the payment of said debts at public auction, within one hundred and twenty days after executing a bond which he is required to execute by law, first having given at least 30 days notice of the time and place of such sale." It will be observed at once that there is a marked distinction between the provisions in the two deeds. In the Churchill deed the direction is to sell in 120 days; after giving 30 days' notice. In the case at bar the assignee is empowered to carry out the trust "by conforming to the laws of the United States in said territory." It is insisted by appellants that the proviso, which is in conflict with the foregoing, is the rule, and destroys the deed. Burrill, Assignm. (6th Ed.) p. 381, says: "The general rule applied by the courts in the construction of assignments is that well known one expressed by the maxim, 'Ut res magis valeat quam pereat,' the instrument in question shall rather be made available than suffered to fail. Such a construction will be given to the assignment as will carry into effect the intention of the parties. * * * Where it is ambiguous in its

terms, and admits of two constructions, that interpretation should be given to it which will render it legal and opera-tive, rather than that which will render it illegal and void." We do not think it a sound rule of construction to hold that, when direction is given to comply with the law, a proviso added in conflict with the law should be upheld, and thereby the deed be allowed to fail. We think the rule of construct-ion that upholds the deed is the correct one. The charit-able view of the counsel for appellee, that the attorney who drew the deed supposed he was making a proviso in accord-ance with the statute, not being aware of the holding in Churchill vs Hill, is very probably correct; and in view of the correct rule being, in our opinion, as stated above, the proviso is harmless, and we have no criticism on the charit-able view taken by counsel. That the expression of a mo-tive before the granting clause should not control a posi-tive direction in the granting clause is clearly stated in 2 Devl. Deeds, § 838: "But if he [the grantor] does not make any condition, but simply expresses the motive which in-duces him to execute the deed, the legal effect of the grant-ing words cannot be controlled by the language indicating the grantor's motive." And, indeed, in the Churchill Case, the court concludes the decision with the following signifi-cant words: "The assignee was required to sell them [meaning the choses in action]. The language of the deed to that effect is clear and unambiguous, and there is nothing in it to indicate a contrary intention." The foregoing is cited by appellee as sustaining the construction of the court in the Churchill deed, and we think it correct. That the in-tent is the controlling factor is well stated by Mr. Devlin in sections 837 and 843. Section 837: "The intent, when ap-parent and not repugnant to any rule of law, will control technical terms, for the intent, and not the words, is the essence of every agreement. * * * And, if a deed can-not take effect in the precise way intended, yet, if it can op-

erate in another mode, it will be so construed.". And in section 843: "A grammatical construction is not always to be followed, and it has been well said that neither false English nor bad Latin will make void a deed, when the meaning of the party is apparent. In construing an instrument, that construction is always to be adopted which will accomplish the object for which the instrument was executed. * * * It is not the practice of courts of justice to divest persons of their estate by a rigid adherence to the rules of grammatical construction or by a strict interpretation of the language of an instrument, when the sense in which the words were used is apparent from other portions of the instrument, vieged in the light of the attending facts. The sole object to be attained in the construction of contracts is to ascertain the real intention of the parties; and, with this view, the whole contract and all its provisions, together with the relations of the parties towards each other, will be considered, and effect will be given to the intent thus ascertained, however clumsily the instrument may be worded, and however grossly it may violate the strict rules of grammatical construction." Justice Cowen, in discussing this question in Darling vs Rogers, 22 Wend. 487, says: "But the whole is a mere question of authority. The debtor has given a deed, with trusts which are perfectly valid to a certain extent. He has completely exhausted the power conferred by law in raising a trust to sell; and the question is whether because in one idle particular he happens to have gone beyond his strength, and failed, everything that is well done must fail with it. I think all must agree that there is nothing in the nature of things which calls for such a result. No authority was cited on the argument, none by the learned chancellor in the course of his opinion, giving the least countenance to the doctrine that the provisions in a deed which are in themselves available shall be frustrated by any effort of the grantor to create a right, or impose a condition or restrict-

ion, which is void as being beyond his legal power. I there-fore feel authorized to say there is no such authority. It shall be my business to show that there are several the other way. I know of none which gives the least color to the objection which is raised against this deed operating as far as its provisions are lawful; and, from the great number of authorities which go to support it, I feel authorized to infer that there is no book of the law which, when correctly understood, ought to leave us in doubt." And on page 493 it is further said, after discussing this question as to this particular case: "Nor is this confined to devises. The prevailing doctrine of equity (and in many cases of our common and statute laws also) is that, when good and bad provisions are mixed in a deed, the good shall be saved, so far as consistent with probable intent." Darling vs Rogers, 22 Wend. 487-493. In our opinion, the deed of assignment in the case at bar is good, the judgment of the lower court was correct, and it is therefore affirmed.

SPRINGER, C. J., and CLAYTON, J., concur.